728 P.2d 1369

**Dorothy K. GONZALES, Plaintiff-Appellant,**

v.

**MOUNTAIN STATES MUTUAL CASUALTY CO., and Penasco Independent Schools, Defendants-Appellees**

No. 8855.

Court of Appeals of New Mexico.

Nov. 4, 1986.

James A. Burke, Santa Fe, for plaintiff-appellant.

Peter N. Ives, Campbell & Black, P.A., Santa Fe, for defendants-appellees.

### OPINION

GARCIA, Judge.

This is a workmen's compensation appeal involving the computation of the disabled worker's average weekly wage, the denial

of prejudgment interest and the award of attorney's fees.

## FACTS

Plaintiff was an owner-operator of a school bus and, pursuant to a contract, transported school children for the Penasco Independent School System (defendant). Plaintiff suffered an injury causally related to her employment. As a result, she was found to be totally disabled by the trial court.

The owner-operator transportation contract was based on a detailed and comprehensive formula developed by the State Transportation Department and the Director of Public School Finance, covering various categories and projected expenses. The contract required that plaintiff provide, maintain and operate a bus for a specified number of days and provide transportation for school children over a designated route. In return, plaintiff would receive the total sum of $12,055.71 for the 180 day school year, payable in ten monthly installments.

The contract amount was based on the aggregate amount entered into a production worksheet. The production worksheet breaks down the amounts to be paid to the owner-operator of the bus into seven categories: (a) vehicle depreciation allowance; (b) operation and maintenance; (c) profit on operational revenue; (d) fuel allowance; (e) driver's salary and institute increment; (f) employee benefits; and (g) gross receipts tax.

In fixing plaintiff's average weekly wage, the trial court considered only that portion of plaintiff's contract within the category "driver's salary and institute increment," $4,002.73, paid in ten equal monthly installments. By multiplying that figure by twelve and dividing it by fifty-two, the court determined that plaintiff's average weekly wage was $92.37 and, pursuant to NMSA 1978, Section 52–1–41(A), her disability entitlement was set at $61.58.

During the contract year, plaintiff operated and maintained her bus at a cost far below that provided in the projected expenses and realized a net profit of $3,842.60 over and above her salary and institute increment.

Defendant has no requirement that the funds it allocates for the individual categories be actually spent. Defendant does not monitor the owner-operator's operation and maintenance records nor does defendant require that any specific amount of money be expended for any particular purpose so long as the buses operate according to applicable rules and regulations. In the event operation and maintenance costs exceed the projected expenses contained in the contract, the owner-operator is required to pay all additional expenses without reimbursement. Similarly, defendant testified "[T]he contractor [owner-operator] is paid the set contract amount and I would imagine that if the contractor has lesser expenses than those for which he or she were remunerated by their school district, that they do whatever they want with it." In this case, plaintiff kept the excess profits and utilized them for her own personal benefit. Plaintiff precisely calculated her excess profits and reported them to defendant and to the Internal Revenue Service for tax purposes.

The evidence also indicates that for social security and educational retirement purposes, defendant reported sixty percent, or $7,233.43 as "salary" on plaintiff's personnel forms. Finally, evidence was presented to indicate that for purposes of workmen's compensation premium computations, defendant reported only the driver's salary paid, including institute increments.

## ISSUES

(1) Whether the trial court erred in finding that plaintiff's salary for workmen's compensation purposes was $4,002.73;

(2) Whether the trial court abused its discretion in denying plaintiff's request for prejudgment interest; and

(3) Whether the trial court abused its discretion in awarding plaintiff $8,000 as attorney fees,

## ANALYSIS

Once the trial court determines that a worker is disabled and entitled to com-

pensation benefits, its task is to determine the worker's average weekly wage. Compensation benefits paid to disabled workers are computed in accordance with the various formulae contained in NMSA 1978, Section 52–1–20. In relevant part, Section 52–1–20(A) defines wages as:

[T]he money rate at which the services rendered are recompensed under the contract of hire in force at the time of the accident, either express *or implied,* and shall not include gratuities received from employers or others, nor shall it include the amounts deducted by the employer under the contract of hire for materials, supplies, tools and other things furnished and paid for by the employer and necessary for the performance of such contract by the employee, but the term "wages" shall include the reasonable value of board, rent, housing, lodging or any other similar advantages received from the employer, the reasonable value of which shall be fixed and determined from the facts in each particular case[.] [Emphasis added.]

In this appeal, plaintiff contends that the trial court erred in failing to consider other portions of the contract, apart from the driver's salary and institute increment, in calculating her average weekly wage. Specifically, because plaintiff was able to earn excess profits during the contract year and gained an economic advantage, she contends that those profits, or portions thereof, should be included in the calculation. We agree.

The general rule touching on this issue is stated by Larson in his treatise on workmen's compensation. He writes:

In computing actual earnings as the beginning point of wage-basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, as, for example, tips and bonuses, and room and board, constituting real economic gain to the employee. A car allowance is includable as wage only if it exceeds actual travel expenses.

2 A. Larson, *The Law of Workmen's Compensation,* § 60.12 (1983).

This general rule was adopted in New Mexico in *Hopkins v. Fred Harvey, Inc.,* 92 N.M. 132, 584 P.2d 179 (Ct.App.), *cert. denied,* 92 N.M. 180, 585 P.2d 324 (1978). The question in *Hopkins* was whether tips were wages to be considered for purposes of determining the rate of compensation. In addressing the question, *Hopkins* indicates that Larson's general rule is applicable to Section 52–1–20(A). The rule requires that the court consider anything of value received as consideration for work when such consideration constitutes real economic gain to the employee. The *Hopkins* opinion determined that the tips involved came under the general rule and concluded that those tips should have been considered in calculating wages because they were intended by the parties to be further compensation for services rendered.

While the precise issue in *Hopkins* differs from the issue presented in the case on appeal, we deal with the same essential principle: has plaintiff received something of value under the contract constituting real economic gain that should be included in the calculation of her wages?

For wage calculation purposes, a distinction is drawn between the "real economic gain" test for the worker and dollar-for-dollar reimbursement paid by the employer. The former may be included in the wage calculation; the latter may not. This distinction is noted in *Thibeault v. General Outdoor Advertising Co.,* 114 Conn. 410, 158 A. 912 (1932). The court in *Thibeault,* in considering whether a daily allowance for board and lodging of plaintiff-employee when he was out of town should be included in his weekly earnings, set out the general test which was to guide later courts in addressing similar questions: "In each case the test to be applied is, Does the allowance represent a real and reasonably definite economic gain to the employee, reasonably within, or at least not contrary to, the fair intent of the parties?" *Id.* at 913.

For example, cases decided since *Thibeault* essentially follow the view that employer provided meals help a workman meet his personal expenses and, therefore, represent a real economic gain. Yet, when an employee is merely reimbursed for amounts he is called to spend in the course of his employment and activities which he has no occasion to pursue when not employed, the amount so paid cannot be regarded as part of his earnings. *See Rusty Pelican Restaurant v. Garcia*, 437 So.2d 754 (Fla.App.1983); *Lavin v. Alton Boxboard Co.*, 431 So.2d 202 (Fla.App.1983); *Rhaney v. Dobbs House, Inc.*, 415 So.2d 1277 (Fla.App.1982); *Fairway Restaurant v. Fair*, 425 So.2d 115 (Fla.App.1982); *Bananno v. Employer's Mutual Liability Insurance Co. of Wisconsin*, 299 So.2d 923 (La.App.1974).

The case of *Moorehead v. Industrial Commission*, 17 Ariz.App. 96, 495 P.2d 866 (1972) dealt with the issue of whether travel expenses paid by an employer should be included in the workman's average weekly wage. The appellate court disallowed inclusion of monies paid for mileage expenses in the average monthly wage of the injured workman. The court held:

> We think the principle to be derived from the foregoing is that "wages" do not include amounts paid to the employee to reimburse him for employment-related expenditures of a nature which would not be incurred but for his employment. Such payments are simply not intended as compensation for services rendered. Before any part of such allowances or reimbursements can be considered as a part of the employee's "wages" there should be some showing that the payments are more than sufficient to reimburse the employee for the work-related expense so that in effect the excess can be considered as extra compensation to the workman for his services performed.

*Id.* at 99, 495 P.2d at 869.

In our present case, plaintiff argued to the trial court that the entire sum received under the contract should be included in her wage base. Plaintiff's argument is not supportable by law. When an employer reimburses an employee for expenses incurred, that reimbursement is not to be included as part of the employee's wages for compensation purposes. *Cf. Thompson v. Cloud*, 166 So.2d 28 (La.App.1964). On the other hand, the cases indicate that when an employer provides remuneration in excess of actual expenses and the employee is free to keep the excess for his own use, the employee has received an economic advantage which may be considered as part of his wages for compensation purposes. *See Thibeault; Weingarten v. Democrat & Chronicle*, 19 A.D.2d 566, 239 N.Y.S.2d 980 (1963).

With the evidence presented, it is clear that portions of the payments under the contract reimbursed plaintiff for actual expenses incurred in operating and maintaining the bus. Those dollar-for-dollar reimbursements may not be included in the calculation of the worker's average weekly wage. It is equally clear that plaintiff received more than her salary and dollar-for-dollar reimbursement and was able to "pocket" the difference between what was paid and her actual expenses in providing, operating and maintaining the bus. This difference constitutes a real economic gain to plaintiff and constitutes extra compensation which may properly be included in plaintiff's wage calculation.

The *Hopkins* standard that additional compensation be within the contemplation of the parties is met here. Defendant reported sixty percent of plaintiff's total contract price for social security and educational retirement purposes. This amount, $7,233.43, was very close to the actual amount earned by plaintiff by combining her salary and institute increment with her excess profit, much closer than her salary and institute increment standing alone. Also, defendant neither monitored plaintiff's expenditures nor expected a payback of any excess. Therefore, the additional economic gain realized by plaintiff by virtue of operating and maintaining the bus below the production worksheet estimates

constituted an implied compensation within the meaning of Section 52–1–20(A).

The Workmen's Compensation Act is to be liberally construed in favor of the injured worker so as to insure the full measure of the worker's exclusive statutory remedy. *Evans v. Stearns-Roger Manufacturing Co.*, 253 F.2d 383 (10th Cir.1958). A primary purpose of the Act is to keep injured workers from becoming dependent on the welfare programs of the state by compensating them with some portion of the wages they would have earned had it not been for the work-related disability. *Casias v. Zia Co.*, 93 N.M. 78, 596 P.2d 521 (Ct.App.), *cert. denied*, 93 N.M. 8, 595 P.2d 1203 (1979); *see also Aranda v. Mississippi Chemical Corp.*, 93 N.M. 412, 600 P.2d 1202 (Ct.App.), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979). We determine the court's exclusion of the funds paid to plaintiff which did not constitute a dollar-for-dollar reimbursement denied the injured worker benefits authorized under the Workmen's Compensation Act. Accordingly, we remand this matter to the trial court for a redetermination of plaintiff's average weekly wage. Plaintiff presented evidence concerning her net profit over and above her salary and institute increment for the school year 1981–82. The trial court may wish to consider that testimony, or take additional testimony to accurately determine which portions of the transportation contract constitute actual reimbursement for expenses incurred and which portions are properly includable in plaintiff's average weekly wage.

**PREJUDGMENT INTEREST**

■ Plaintiff contends the trial court erred in refusing to award prejudgment interest. NMSA 1978, Section 52–1–38(B) provides in part that judgments in worker's compensation cases: "[S]hall be governed by the laws of this state with respect to judgments or executions in civil cases * * " NMSA 1978, Section 56–8–4(B) (Repl.1986) permits an award of prejudgment interest in civil actions in the discretion of the trial court. The statute requires that the court consider whether plaintiff was the cause of unreasonable delay and further requires the court to consider whether reasonable and timely offers of settlement were made.

In denying plaintiff's request for prejudgment interest, the trial court found defendants acted in good faith in defending against plaintiff's "aggressively presented" computation of weekly wage claim; that defendants were required to spend an "inordinate [amount of] time" in defending against plaintiff's claim; that plaintiff's position concerning wage computation was "unduly emphasized time-wise;" and that a timely offer of settlement was made to plaintiff before trial.

By virtue of our disposition of the wage calculation issue, the basis for the trial court's denial of prejudgment interest no longer stands. We do not substitute our own judgment for that of the trial court in determining whether prejudgment interest should or should not be awarded. Because we vacate the judgment and remand the case for a recomputation of plaintiff's entitlement, the trial court will have another opportunity to consider whether an award of prejudgment interest is proper in this case.

**ATTORNEY FEES**

■ Plaintiff complains that the trial court abused its discretion in its award of fees. The trial court denied plaintiff's additional award of attorney fees because she was unsuccessful in her attempt to establish plaintiff's average weekly wage at a higher level. Because we have determined the trial court erred in its wage calculation and remand for a redetermination of benefits, it will be necessary to reconsider the attorney fee award. Additionally, plaintiff's pursuit of a higher wage claim is no longer unsuccessful and the trial court may properly consider this, together with the other *Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979) factors, in setting a reasonable attorney fee. We award plaintiff $2,000 as a reasonable appellate attorney fee.

Reversed and remanded.

IT IS SO ORDERED.

ALARID and FRUMAN, JJ., concur.