820 P.2d 436

Jose A. ANTILLON, Claimant–
Appellee/Cross–Appellant,

v.

NEW MEXICO STATE HIGHWAY
DEPARTMENT, Respondent–
Appellant/Cross–Appellee.

No. 12449.

Court of Appeals of New Mexico.

July 16, 1991.

Frederick H. Sherman, Sherman & Sherman, P.C., Deming, for claimant-appellee/cross-appellant.

Daniel G. Acosta, Reeves, Chavez, Greenfield, Acosta & Walker, P.A., Las Cruces, for respondent-appellant/cross-appellee.

## OPINION

MINZNER, Judge.

Employer appeals and claimant cross-appeals the compensation order of the workers' compensation administration. We discuss (1) whether certain fringe benefits are included in the definition of "wages" under NMSA 1978, Section 52–1–20(A) (Orig. Pamp.), and (2) whether this claim should be resolved under the provisions of the 1986 Act, NMSA 1978, §§ 52–1–1 to –69 (Orig.Pamp. & Cum.Supp.1986), commonly referred to as the Interim Act, or the 1987 Act, NMSA 1978, §§ 52–1–1 to –70 (Repl. Pamp.1987). We reverse the workers' compensation judge (WCJ) on those issues. We address two other issues summarily, and affirm on those issues. Claimant's cross-appeal raises various issues concerning the award of attorney fees made under the 1987 Act. Because we conclude that this claim was actually resolved in part under the Interim Act, we remand to permit the WCJ to clarify his ruling and for redetermination of attorney fees without addressing the issues raised in the cross-appeal. We discuss the relevant facts in connection with our discussion of each issue.

### Procedural Issues.

At the outset, we note that claimant contends that the issues raised on appeal were not properly raised in the docketing statement, or were not properly briefed, or, in some cases, were waived below by statements made by employer's attorney during certain telephone conferences. We have reviewed the docketing statement, the brief-in-chief, and the telephone conferences. We hold that the issues argued on appeal were properly raised and preserved below, were adequately raised in the docketing statement, and have been properly briefed.

### Whether "Wages" as Used in Section 52–1–20(A) Includes Fringe Benefits.

Claimant was employed by the New Mexico State Highway Department. As a state employee, he received a base salary of $1,180 per month plus certain fringe benefits. The fringe benefits at issue in this appeal are group insurance and retirement benefits available to claimant under the Public Employees' Retirement Act, NMSA 1978, §§ 10–11–1 to –38 (Repl.Pamp.1983 & Cum.Supp.1986), for which employer contributed $28.52 and $32.47 a week, respectively. In addition, claimant received per diem payments for out-of-town travel pursuant to the provisions of the Per Diem and Mileage Act, NMSA 1978, § 10–8–1 to –8 (Repl.Pamp.1983 & Cum.Supp.1986), in an amount that the WCJ found to average $12 a week. The WCJ included all three of these amounts as part of claimant's "wages" under Section 52–1–20(A). We address the group insurance and retirement benefits together, and the per diem separately.

### Group Insurance and Retirement Benefits.

Section 52–1–20(A) reads as follows:

A. whenever the term "wages" is used, it shall be construed to mean the money rate at which the services rendered are recompensed under the contract of hire in force at the time of the accident, either express or implied, and shall not include gratuities received from employers or others, nor shall it include the amounts deducted by the employer under the contract of hire for materials, supplies, tools and other things furnished and paid for by the employer and necessary for the performance of such contract by the employee, but the term "wages" shall include the reasonable value of board, rent, housing, lodging *or any other similar advantages* received from the employer, the reasonable value of which shall be fixed and determined from the facts in each particular case[.] [Emphasis added.]

Both parties focus on whether these benefits are a "similar advantage" to those enumerated in the statute, relying on cases from other jurisdictions and their reading of the leading workers' compensation law treatise. *See* 2 A. Larson, *Workmen's Compensation Law* §§ 60.12(a), (b) (1989) (*Larson's*). In addition, claimant argues that this issue was already decided in his favor in a district court decision subsequently appealed on a different issue. *See Montney v. State ex rel. State Highway Dep't*, 108 N.M. 326, 772 P.2d 360 (Ct.App. 1989) (holding that, in the absence of statutory authorization, PERA disability benefits may not be used to offset compensation due under the workers' compensation act). We assume without deciding that the district court's judgment in *Montney* included the fringe benefits at issue here. *But see Reeves v. Wimberly*, 107 N.M. 231, 236, 755 P.2d 75, 80 (Ct.App.1988) (where appellant attacked trial court ruling on basis of collateral estoppel, it was his burden to bring up record sufficient to review the basis of the attack and where he failed to do so all inferences as to sufficiency of evidence would be resolved in favor of trial court's ruling). Nevertheless, ordinarily the doctrine of collateral estoppel should not bar a state agency from arguing a point of law on the ground that it lost on that issue in prior litigation with a different party. *See Restatement (Second) of Judgments* § 29(7) and comment i (1982). Thus, we conclude employer was not precluded from litigating the fringe benefits issue in this case.

Although both parties claim their position on this issue is supported by *Larson's*, we believe that treatise supports employer's position. Professor Larson notes that the term "wages" generally includes anything of value received as consideration for the work, such as tips, bonuses, commissions, and room and board, constituting real economic gain to the employee, 2 *Larson's* § 60.12(a), but he also notes that fringe benefits similar to the insurance and retirement benefits at issue in this case are not generally included as wages. *Id.,* § 60.12(b). Professor Larson relies on *Morrison–Knudsen Construction Co. v.*

*Director, Office of Workers' Compensation Programs*, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983), in which the United States Supreme Court resolved a similar issue involving the term "wages" as used in a federal statute with language similar to our own. Professor Larson argued the case for petitioners (employer and insurance company) in *Morrison–Knudsen.*

Because this issue is an issue of New Mexico rather than federal law, we do not consider *Morrison–Knudsen* controlling; however, we consider it for whatever persuasive value its reasoning may have. Thus, we discuss only those portions of the opinion we find to be particularly persuasive or germane to this case.

*Morrison–Knudsen* held that the term "wages" did not include payments made by an employer to union trust funds that purchased, inter alia, group insurance and retirement benefits for workers. The Court based its decision in part on the language of the statute and in part on the policy reasons behind the Act. With respect to the language of the statute, the Court held that the contributions were not a "similar advantage" to board, rent, lodging, or housing provided by the employer. The Court reasoned that the items referred to in the statute, like lodging, have a present value that can be readily converted into a cash equivalent on the basis of market values. By contrast, the value of an employee's interest in group insurance and retirement benefits is not easily converted into a cash equivalent. In particular, the employer's cost in purchasing these benefits does not accurately measure the value of these benefits to the employee. For example, the employee could not take the amount of the employer's contribution and purchase the same benefits for that amount on the open market.

In addition, the Court rejected the claimant's policy argument that inclusion of fringe benefits was required by the remedial nature of the statute. The Court noted that workers' compensation acts are based on a complex legislative balancing of the interests of employers and employees. Thus, for example, employees give up their

rights to sue their employers in tort, which would require them to prove that the employer was negligent, in exchange for the greater certainty of a more limited recovery without proof of negligence. In a similar vein, the Court indicated that for a number of decades the term "wages" had been interpreted in a manner that excluded consideration of fringe benefits. *Id.* at 634–35, 103 S.Ct. at 2050–51. The Court believed that adopting an interpretation that would include fringe benefits in the definition of "wages" would upset this balancing of interests, and was best left to the legislature.

Professor Larson specifically cautions in his treatise against interpreting the term "wage" to cover such fringe benefits. He states:

> Workers' compensation has been in force in the United States for over seventy years, and fringe benefits have been a common feature of American industrial life for most of that period. Millions of compensation benefits have been paid during this time. Whether paid voluntarily or in contested and adjudicated cases, they have always begun with a wage basis calculation that made "wage" mean the "wages" that the worker lives on and not miscellaneous "values" that may or may not someday have a value to him depending on a number of uncontrollable contingencies. Before a single court takes it on itself to say, "We now tell you that, although you didn't know it, you have all been wrongly calculating wage basis in these millions of cases, and so now, after seventy years, we are pleased to announce that we have discovered the true meaning of 'wage' that somehow eluded the rest of you for seven decades," that court would do well to undertake a much more penetrating analysis than is visible in the Circuit Court's opinion in [*Morrison–Knudsen*] of why this revelation was denied to everyone else for so long.

2 *Larson's* § 60.12(b) at 10–635, –636.

A number of other courts that have considered this issue have reached the same result that the United States Supreme Court reached in *Morrison–Knudsen,* although on a different rationale. *See, e.g., Still v. Industrial Comm'n,* 27 Ariz.App. 142, 551 P.2d 591 (1976); *Nelson v. SAIF Corp.,* 302 Or. 463, 731 P.2d 429 (1987). This appears to be the majority position. *See generally Schlotfeld v. Mel's Heating & Air Conditioning,* 233 Neb. 488, 502, 445 N.W.2d 918, 927 (1989) (reviewing authority and adopting majority view as "the more practical and reasonable approach").

We recognize that Florida has rejected the reasoning of *Morrison–Knudsen;* under Florida law, the question of whether fringe benefits are included in the definition of "wage" is controlled by whether the claimant's rights in the particular benefit have vested. *See Sunland Training Center v. Irving,* 384 So.2d 745 (Fla.Dist.Ct. App.1980); *City of Tampa v. Bartley,* 413 So.2d 1280 (Fla.Dist.Ct.App.1982). We also recognize that Colorado, which has a very similar statute to that of New Mexico, has interpreted "wages" to include group health and life insurance coverage, reasoning that the benefits were bargained-for advantages similar to board and lodging, *Murphy v. Ampex Corp.,* 703 P.2d 632 (Colo.Ct.App.1985), and that the Alabama statute, which uses different language than our statute, has been interpreted to include employer-paid health insurance premiums as wages. *Ex parte Murray,* 490 So.2d 1238 (Ala.1986).

■ Nevertheless, on balance, we are not persuaded that the fringe benefits at issue in this case are sufficiently similar to lodging or meals provided by the employer to be included in the phrase "similar advantages" as used in Section 52–1–20(A). However, because the benefits are not expressly excluded, we also look to the legislative history for any indication that the legislature may have intended to include these benefits in the definition of "wages."

Section 52–1–20 was reenacted by 1965 New Mexico Laws, Chapter 295, Section 13, without change from language of many years standing. *See* NMSA 1941, § 57–912(m)(1). Although by 1965 fringe benefits had been around for some time, we are

aware of no New Mexico authority including them within the meaning of "wages."

The fact that the legislature repeated language that had been interpreted as not including fringe benefits indicates a legislative intent to exclude fringe benefits. The legislature is presumed to know the law. *See Bettini v. City of Las Cruces*, 82 N.M. 633, 485 P.2d 967 (1971) (referring to New Mexico statutory and judicial law); *Tomlinson v. State*, 98 N.M. 213, 214–15, 647 P.2d 415, 416–17 (1982) ("We must presume that the Legislature was aware of [a relevant] common law doctrine ... when it enacted [a statute]"). *See also* N. Singer, *Sutherland Statutory Construction* § 52.01 at 521 (4th ed. 1984) ("Similar statutes of other states comprise a type of extrinsic aid deserving special attention in the process of interpretation"). Therefore, we hold that the PERA and insurance benefits in this case are not within the definition of "wages" in Section 52-1-20.

The benefits must be considered wages if they are part of the "money rate at which the services rendered are recompensed under the contract of hire in force at the time of the accident, either express or implied." *Id.* However, we hold that they are not. The worker is not entitled to receive money in place of the benefits. Further, the Workers' Compensation Act, like the Longshoremen's and Harbor Workers' Compensation Act at issue in *Morrison–Knudsen*, was "designed to strike a balance between the concerns of the * * * workers on the one hand, and their employers on the other." *Id.*, 461 U.S. at 636, 103 S.Ct. at 2052. Such a balance creates reasonable expectations which should be altered only by the legislature. *Id.*

*Per Diem.*

██ Employer also challenges the WCJ's determination that claimant's per diem should be considered part of his wage. Employer points out that, by law, a state employee's per diem is reimbursement for travel expenses incurred in performance of the public business. *See* § 10-8-4. Under *Gonzales v. Mountain States Mutual Casualty Co.*, 105 N.M. 100, 728 P.2d 1369

(Ct.App.1986), reimbursement for expenses incurred in performance of the job is not considered part of a worker's wage unless the reimbursement is in excess of the employee's actual expenses and thus constitutes a real economic gain to the employee.

We agree with employer that, as a matter of law, the claimant did not make a sufficient showing on this issue to warrant inclusion of per diem in his wage. Claimant testified that he received an average of $12 or $12.50 a week per diem. This testimony is sufficient to support the finding concerning the amount of per diem. However, under *Gonzales*, claimant was also required to show that the per diem he received was in excess of his actual expenses, and thus constituted a real economic gain, rather than reimbursement for actual expenses. Claimant did not testify one way or the other on this issue. Thus, claimant failed to make a legally sufficient showing that the average amount of per diem should be included in his wage.

*Which Act Applies?*

Claimant was injured on January 26, 1987. As a result of this injury, he had surgery in April 1987. Both these dates are dates during which the 1986 Act, or Interim Act, was in effect. It is undisputed that claimant did not return to work until March 1988. The WCJ found as fact that "[c]laimant's back condition was aggravated by his return to work" and that the aggravation was a "subsequent and secondary accidental injury." The WCJ also found that for the period from May 23, 1988, the date that claimant underwent a second surgery, until further order, claimant was totally temporarily disabled and the disability "began on May 23, 1988 * * * [and was] the direct and proximate result * * * of the accident of January 26, 1987 and the subsequent aggravation."

The WCJ concluded that the claim, including the issue of attorney fees, was controlled by the 1987 Act, which was the act in effect on May 23, 1988. *See Strickland v. Coca–Cola Bottling Co.*, 107 N.M. 500, 760 P.2d 793 (Ct.App.1988); *Bateman v. Springer Bldg. Materials Corp.*, 108

N.M. 655, 777 P.2d 383 (Ct.App.1989). Employer argues that the Interim Act should apply because by April 1987 claimant had suffered a compensable injury and knew he had suffered a compensable injury. Employer contends that the events in 1988 do not bring claimant's claim under the 1987 Act. "At best," according to employer, "the May 23, 1988 surgery could be considered an aggravation of Appellee's condition and should result in a motion to increase Workers' Compensation benefits rather than commencing a new claim for disability."

■ We believe that the proper result is somewhere between the positions of the WCJ and employer. Employer seems to assume that NMSA 1978, Section 52-1-56, which permits an increase in disability award when the disability of the worker has become more aggravated, governs all claims when a work-related injury is aggravated during employment. That assumption is not correct. As stated in 3 *Larson's* § 81.31(b), "When it is said that change in condition includes aggravation of the first injury, this must be understood to include aggravation only under circumstances that would not amount to a new compensable injury." Here, the WCJ found that the aggravation of claimant's back condition was a "subsequent and secondary accidental injury." Reading the WCJ's compensation order as a whole, we conclude that the WCJ found that claimant had suffered a new compensable injury in 1988, when the 1987 Act was in effect. Determining when an aggravation of an injury constitutes a new compensable injury is a matter of some difficulty, *see id.,* but we need not address that issue in this appeal because employer's briefs do not appear to raise that issue and, in any case, do not provide a sufficient summary of the pertinent evidence for us to review the matter. *See* SCRA 1986, 12–213(A)(3).

In short, the WCJ's findings establish two compensable injuries, the first being governed by the Interim Act and the second being governed by the 1987 Act. As a consequence, any attorney's fees must be apportioned between the two claims and then awarded in accordance with the Act governing each claim.

■ In making the apportionment, the WCJ first should determine what benefits claimant would have received had he not suffered a second compensable injury. Next, the WCJ should determine what portion of the benefits obtained as a result of his attorney's efforts is represented by benefits attributable to the first compensable injury. Fees associated with benefits awarded for the first compensable injury are computed under the Interim Act and fees associated with benefits awarded for the second compensable injury are computed under the 1987 Act. Of course, the benefit obtained by worker's attorney is only one factor in determining attorney fees. *See generally Woodson v. Phillips Petroleum Co.,* 102 N.M. 333, 695 P.2d 483 (1985) (in setting attorney fee award in workers' compensation case, it is proper for trial court to consider amount of compensation and to use percentage of that award as one factor, along with others, in arriving at proper attorney fees).

*Issues addressed summarily.*

■ 1. Employer argues that the WCJ abused his discretion in amending the findings and conclusions without providing employer an opportunity to be heard or to submit new evidence. Employer's arguments are based on the assumption that the findings and conclusions entered on March 15, 1990, were a final judgment. They were not. *See Curbello v. Vaughn,* 76 N.M. 687, 417 P.2d 881 (1966). We know of no authority that would prevent the WCJ from amending an order that is not final, and employer has not cited any authority for the proposition. Accordingly, we do not address this issue further. *See In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984).

■ 2. The WCJ found as fact that Dr. Smith, a provider whose authority to treat claimant was not in dispute, referred claimant to Dr. Bieganowski; that the provision of services through several doctors, including Dr. Bieganowski, was adequate and satisfactory; and that the bills for medical

**8**

treatment, including the bill for the second surgery, were reasonable and necessary. On appeal, employer contends that the hearing officer erred because the care provided by Dr. Bieganowski was not authorized and was unnecessary.

Employer argues that the care provided was adequate, and therefore employer was not required to provide additional care through Dr. Bieganowski. *See Gregory v. Eastern N.M. Univ.*, 81 N.M. 236, 465 P.2d 515 (Ct.App.1970). However, this argument overlooks the fact that the finding of adequacy was predicated on the inclusion of Dr. Bieganowski's services. Similarly, employer points to conflicting evidence on the issue, specifically Dr. O'Neal's opinion, expressed two days before the surgery, that the surgery was unnecessary, and contends that this case is similar to *Gregory.* However, in *Gregory*, the trial court found as fact that the surgery was unnecessary, and this court affirmed the finding as supported by substantial evidence. Thus, *Gregory* does not require reversal in this case. *See State v. Anderson*, 107 N.M. 165, 754 P.2d 542 (Ct.App.1988) (possibility that another fact-finder would have drawn different inferences on similar facts does not require reversal). We hold that the testimony of Dr. Bieganowski and the evidence concerning the outcome of the second surgery, which confirmed the presence of structural abnormalities, is substantial evidence in the record as a whole to support the finding. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988). We do not address employer's arguments concerning Dr. Bieganowski's authorization to perform the surgery because, in light of the other findings, the issue would not change the result. *See Wright v. Brem*, 81 N.M. 410, 467 P.2d 736 (Ct.App.1970).

*Cross–Appeal.*

Claimant's cross-appeal raises various issues concerning the award of attorney fees in this case. All the issues are based on the assumption that the 1987 Act applies to the attorney fee issues. In view of our disposition, we do not address claimant's arguments involving the 1987 Act. Instead, we direct the WCJ to vacate the findings and conclusions previously entered on this issue, and redetermine the issue of attorney fees.

*Conclusion.*

The compensation order is reversed. This case is remanded to the workers' compensation administration with instructions that the compensation order previously entered be vacated, and new findings of fact and conclusions of law not inconsistent with this opinion be entered on both the merits of the claim and claimant's entitlement to attorney fees. The WCJ may consider the services of claimant's counsel on appeal in awarding attorney fees on remand.

IT IS SO ORDERED.

HARTZ and CHAVEZ, JJ., concur.