867 P.2d 1198

Lemuel APODACA, Claimant–Appellee,

v.

PAYROLL EXPRESS, INC., Leonard Jensen d/b/a Leonard Jensen Logging, and United States Fidelity & Guaranty Company, Respondents–Appellants.

No. 14539.

Court of Appeals of New Mexico.

Nov. 16, 1993.

Benito Sanchez, Benito Sanchez, P.A., Albuquerque, for claimant-appellee.

Timothy R. Briggs, Thomas R. Mack, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for respondents-appellants.

## OPINION

BIVINS, Judge.

Respondents, Payroll Express, Inc. and Leonard Jensen [hereinafter Payroll Express and Jensen], appeal a compensation order awarding Claimant, Lemuel Apodaca, compensation for partial disability and other benefits. Judge John W. Pope presided over the proceeding and filed findings of fact and conclusions of law and a compensation order on all issues except attorney fees. Because Judge Pope was appointed to the district court before the attorney fee issue was resolved, Judge Rosa Q. Valencia presided over that portion of the proceeding. Respondents raise seven issues on appeal that concern: (1) the calculation of average weekly wage with a determination of Claimant's status of employment, (2) the disability award including failure to make an award for a particular period, (3) the adequacy of medical care, (4) the existence of insurance coverage, (5) the need for vocational rehabilitation, (6) the attorney fee award, and (7) reimbursement. We identify those issues below and address them serially. We affirm in part and reverse and remand in part.

### 1. Computation of Average Weekly Wage

Because the status of Claimant's employment and the computation of his average weekly wage are interrelated, we discuss these issues together. And, because Claimant's status determines how his average weekly wage must be calculated, we discuss the status issue first.

#### a. Status of Employment

The judge in Finding of Fact No. 2 found: "Claimant, Lemuel Apodaca, was an employee of Respondents, Payroll Express, Inc. and Leonard Jensen, on July 26, 1990." Respondents forcefully argue that this finding was inadequate for a meaningful review as to Claimant's status. They refer us to our recent decision in Lujan v. Payroll Express, Inc., 114 N.M. 257, 262, 837 P.2d 451, 456 (Ct.App.), cert. denied, 114 N.M. 62, 834 P.2d 939 (1992), where this Court remanded for additional findings on the question of whether the worker was an independent contractor

with respect to his reimbursement for certain items included in his remuneration. Respondents, however, do not request remand in this case, arguing that the evidence would support only one determination: that Claimant was a self-employed independent contractor.

■ While we agree with Respondents that the finding made provides little or no insight as to how the judge reached his decision that Claimant was an employee, we must also agree with Claimant that the rules of procedure do not require more than an ultimate finding of fact. *See* SCRA 1986, 1–052(B) (Repl.1992); *Griego v. Bag 'N Save Food Emporium*, 109 N.M. 287, 291, 784 P.2d 1030, 1034 (Ct.App.1989), *cert. denied*, 109 N.M. 262, 784 P.2d 1005 (1990). Thus, the question becomes whether substantial evidence supports the finding that Claimant was the employee of both Payroll Express and Jensen. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 128, 767 P.2d 363, 367 (Ct.App.), *cert. denied*, 109 N.M. 33, 781 P.2d 305 (1988). The finding must therefore stand unless there was insufficient evidence to support it. *See Id.*

■ This Court, however, declines to consider whether substantial evidence supports the finding because Respondents have not complied with *Martinez v. Southwest Landfills, Inc.*, 115 N.M. 181, 848 P.2d 1108 (Ct.App.1993). Under *Martinez*, we may decline to review where a party challenging the sufficiency of the evidence (1) fails to set forth the substance of *all* evidence bearing on the question, and (2) fails to demonstrate why the evidence under the whole record does not support the finding. *Id.* at 184, 848 P.2d at 1111. In the reply brief, Respondents contend that they are not challenging the sufficiency of the evidence, but rather, the adequacy of the findings and errors of law committed. If that is the nature of the challenge, then we have already pointed out that the ultimate finding in Finding No. 2, which states Claimant is an employee, is adequate under our rules.

Notwithstanding Respondents' disclaimer in their reply brief, their brief in chief does indeed challenge the sufficiency of the evidence. Contrary to *Martinez*, Respondents do not, however, set out all favorable *and* unfavorable evidence. For example, in their statement of the facts, Respondents provide only favorable evidence in support of their argument that Claimant is an independent contractor. In their argument section, Respondents even argue that "the facts are virtually undisputed." This is an incorrect statement because Claimant has specifically brought to our attention evidence which demonstrates control over Claimant by Fidel Martinez, Jensen's son-in-law. Respondents additionally do not meet the other prong of the *Martinez* test, which requires that they demonstrate why unfavorable evidence should be discredited. Because Respondents have failed to comply with *Martinez*, we decline to review the employment status question any further and consequently uphold the judge's determination that Claimant was an employee of both Payroll Express and Jensen.

### b. *Average Wage Computation*

Having determined that the judge's conclusion concerning Claimant's employment status must stand, we examine the average weekly wage computation question on the basis that Claimant was an employee rather than an independent contractor. On the question of average weekly wage, the judge did not make a finding of fact; he did, however, make three conclusions of law:

9. Claimant's workers' compensation rate is $291.75 per week.

10. The wages paid to Claimant by Respondent, Leonard Jensen, amounted to an additional economic gain, because they were well in excess of any employment as a logger.

11. The wages paid by both Respondents should be combined to calculate the Claimant's average weekly wage.

Those conclusions are very similar to Claimant's requested Conclusions Nos. 10, 11, and 12. The judge did not, however, adopt Claimant's requested findings on the average weekly wage question. Those requested findings set forth evidentiary facts which might have supported an average weekly wage sufficient to justify the compen-

sation rate of $291.75 per week in Conclusion No. 9.

■ This Court may treat a conclusion of law as a finding of fact under certain circumstances, *see Watson Land Co. v. Lucero,* 85 N.M. 776, 777, 517 P.2d 1302, 1303 (1974); *Sheraden v. Black,* 107 N.M. 76, 80, 752 P.2d 791, 795 (Ct.App.1988), and we choose to do so here. Conclusion No. 9 should have been listed as a finding of fact and not a conclusion of law, and we will therefore treat Conclusion No. 9 as if it were a finding of fact.

■ As we stated earlier, a judge is only required to list ultimate findings of fact; however, findings not supported by sufficient evidence will not be upheld. *See Tallman,* 108 N.M. at 128, 767 P.2d at 367. The question now becomes whether the judge correctly determined the average weekly wage given that we uphold the decision that Claimant was found to be an employee of Payroll Express and Jensen.

While the judge correctly aggregated the amounts paid by Respondents in Conclusion No. 11, we are unable to tell if the judge used a gross or net amount to arrive at the compensation rate of $291.75. It appears the judge used gross amounts without making deductions for costs to Claimant in determining the average weekly wage, which is incorrect. Additionally, we are unable to tell from the briefs what items are includable as a part of the wage basis for calculation purposes and what items are not. We therefore conclude that the case must be remanded for a determination of average weekly wage using the correct application of the law. *See Tallman,* 108 N.M. at 128, 767 P.2d at 367 (" 'To conclude that an administrative decision is supported by substantial evidence in the whole record, the court must be satisfied that the evidence demonstrates the reasonableness of the decision.'" (quoting *National Council on Compensation Ins. v. New Mexico State Corp. Comm'n,* 107 N.M. 278, 282, 756 P.2d 558, 562 (1988))).

NMSA 1978, Section 52-1-20 (Repl. Pamp.1987), sets forth the method for determining average weekly wage. While we do not, and in fact cannot, make that determination on review, we will set forth several principles to guide the judge on remand.

Section 52-1-20(A) defines wages "to mean the money rate at which the services rendered are recompensed under the contract of hire." They do not "include the amounts deducted by the employer under the contract of hire for materials, supplies, tools and other things furnished and paid for by the employer." *Id.* However, wages do include, "the reasonable value of board, rent, housing, lodging or any other similar advantages received from the employer." *Id.* Thus, with that general definition, which admittedly does not cover the rather unique arrangement with Payroll Express and Jensen involved in this case, the judge on remand will have the task of determining what items to include or exclude from the total pay received directly and indirectly from Respondents.

As we understand the facts, although they are unclear, it appears that Claimant was paid at the time of the accident on the basis of $1.50 per log. From that gross amount, it appears that Claimant's workers' compensation insurance, his taxes, the employer's matching share of taxes, and his operating costs were to be paid. We also understand that Claimant would receive two checks, one, a paycheck from Payroll Express and, two, a so-called contract check from Jensen. What is not clear is whether the Payroll Express check included any remuneration, or whether the remuneration came directly from Jensen. It would appear that this somewhat complicated arrangement was designed so that Jensen could avoid having to carry workers' compensation insurance on the loggers and perhaps also to assure payments of taxes owed by or on behalf of the loggers. In any event, like the court in *Lujan,* we deem it necessary to remand so that the judge can sort through this arrangement to make a determination what are and what are not wages.

■ As already noted, while we make no determination how the law should be applied, we do, however, make several observations which hopefully will provide guidance to the judge on remand. First, it would appear that, in calculating average weekly wage, the

judge should combine the amounts paid to, or on behalf of, an employee at the beginning. Because the judge found Claimant was an employee of both entities, combination is appropriate. Average weekly wage is in fact determined from combination of total earnings from *all* sources of employment, even though here we have a situation which arose only from one source of employment. *See Justiz v. Walgreen's*, 106 N.M. 346, 348, 742 P.2d 1051, 1053 (1987).

Second, with that combined amount, only Claimant's real economic gain should then be considered in computing the average weekly wage, as opposed to sheer gross amounts. *Gonzales v. Mountain States Mut. Casualty Co.*, 105 N.M. 100, 102, 728 P.2d 1369, 1371 (Ct.App.1986), *cert. denied*, 106 N.M. 714, 749 P.2d 99 (1988). In this regard, such portions of the combined payment which represent Claimant's salary, if so denominated, would clearly be included as real economic gain. To determine salary, the judge must first go to the statute. Section 52-1-20(A) excludes from wages costs such as materials and supplies. Other items such as group insurance and retirement benefits have also been found to be deductible. *See Antillon v. New Mexico State Highway Dep't*, 113 N.M. 2, 3-6, 820 P.2d 436, 437-40 (Ct.App.1991). The rationale is that employers would be expected to bear these expenses and not pass them onto an employee. On the other hand, rent, lodging, and similar expenses constitute wages because a person has to spend those regardless.

In Conclusion No. 10, which states that wages paid by Jensen to Claimant amounted to additional economic gain, it is not apparent that the judge made deductions for items which would not represent economic gain. Based on the above discussion, failure to make such deductions would be error. Additionally, any difference between what was paid and actual expenses would also represent economic gain and would be included in average weekly wages. *Gonzales*, 105 N.M. at 103, 728 P.2d at 1372.

▮ Third, after combining gross amounts and determining the economic gain, the judge must then look to the seasonal aspect of the employment and reduce the average weekly wage accordingly. The ultimate wage would then be projected over the entire calendar year instead of only the weeks that the employee actually worked. *See Duran v. Albuquerque Pub. Schs.*, 105 N.M. 297, 299-300, 731 P.2d 1341, 1343-44 (Ct.App.1986), *cert. denied*, 105 N.M. 290, 731 P.2d 1334 (1987); *see also Lujan*, 114 N.M. at 262, 837 P.2d at 456. Respondents make such an argument here because logging takes place only between May and December, and therefore, the net result would be less.

The question then becomes whether Claimant has proven actual wages from work done in the "off-season" to determine whether average weekly wage should be computed using the twelve months. Finding of Fact No. 17 states: "[d]uring the period from February to May, when Claimant was not cutting logs due to weather conditions, he worked as a laborer sorting and pacing [sic] potatoes and at other odd jobs in order to supplement his income." It would appear, however, that Finding of Fact No. 17 does not relate to a determination of average weekly wage, but rather relates to a general finding of Claimant's prior work history. On remand, we leave to the discretion of the judge the issue of whether or not to reach the specifics of this issue.

▮ In connection with these expenses, we find it unnecessary to consider Respondents' argument regarding the exclusion of the IRS records. Claimant has the burden of proving his average weekly wage. The lack of specificity with which Claimant proves his average weekly wage is a question for the judge to resolve. *See Gonzales*, 105 N.M. at 104, 728 P.2d at 1373. We note, in any event, that Respondents were apparently able to use the IRS records to cross-examine in an attempt to impeach Claimant regarding costs and expenses.

In summary, once the judge found Claimant an employee of both Payroll Express and Jensen, it was proper to consider the total amounts paid directly or indirectly by Respondents. The judge did that; however, it is not clear whether he deducted the amounts that did not represent true wages. We remand for this determination.

822

■ Because Judge Valencia did not hear the case or enter findings of fact and conclusions of law, she, of course, is not precluded from conducting a full or partial evidentiary hearing on this question or other questions we remand, except for the issue of attorney fees. *See* SCRA 1986, 1–063 (Repl.1992); *Pritchard v. Halliburton Servs.*, 104 N.M. 102, 104, 717 P.2d 78, 80 (Ct.App.), *cert. denied*, 103 N.M. 798, 715 P.2d 71 (1986).

## 2. *Disability Issues*

Under this heading, we discuss: (1) the judge's failure to make a determination of temporary disability between the date of accident on July 26, 1990, and March 31, 1992, the date from which the award of 40% partial disability was to commence, (2) the challenge to the date of March 31, 1992, as the commencement date for partial disability of 40%, and (3) the challenge to the award of 40% partial disability.

### a. *Temporary Disability Between July 26, 1990, and March 31, 1992*

Respondents desire a determination on temporary disability between the date of the accident on July 26, 1990, and the date in which a partial disability award of 40% was to commence on March 31, 1992. We assume that Respondents want a determination for this gap in time in order to determine the amount of credit and offset due them, if any. The judge determined that (1) Respondents paid Claimant $291.75 per week from the date of the accident through September 12, 1991, and (2) from September 13, 1991, until present, Respondents have paid Claimant $40.85 biweekly. One would have expected Claimant to cross-appeal this omission in the decision. In any event, Claimant, in his answer brief, argues that the findings of fact and conclusions of law implicitly find temporary *total* disability from the day of the accident until March 31, 1992. Claimant insists that the judge inadvertently omitted making a specific finding but that such an omission was not fatal. We disagree for two reasons.

■ First, a judge is required to make findings of fact resolving the material issues raised by the parties if requested to do so. *DeTevis v. Aragon*, 104 N.M. 793, 800, 727 P.2d 558, 565 (Ct.App.1986). In the case at hand, the requested findings of fact from both parties can be construed as having requested a determination of disability for the entire time period at issue. The judge, however, neglected to include a disability percentage for the period of time before March 31, 1992. We remand for the judge to make such a determination.

■ Second, unless erroneous, findings of a lower court or agency will be construed to uphold judgments. *Herrera v. Roman Catholic Church*, 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct.App.1991). Additionally, if from the findings of fact, other necessary facts may reasonably be inferred, a judgment will not be disturbed on appeal. *Id.* However, such is not the case here where we have a situation in which the judge determined a percentage of disability for only a portion of the time in which Claimant was disabled. The disability amount for the time period between July 26, 1990, and March 31, 1992, is not an amount which we can reasonably infer from the findings, and to adopt Claimant's argument would require this Court to make such a finding based on the evidence. This is not the role of a reviewing court. *See DeTevis*, 104 N.M. at 800, 727 P.2d at 565. The disability percentage, for example, could be 100%, or less, for this time period. When such other findings are necessary, justice requires remand for the additional findings of fact and conclusions of law. *See State ex rel. Human Servs. Dep't v. Coleman*, 104 N.M. 500, 505–06, 723 P.2d 971, 976–77 (Ct. App.1986).

### b. *Challenge to the Date of March 31, 1992*

Because of the manner in which we remand as to the interim time period, we decline to decide the issue regarding the commencement date for the 40% disability award. The judge on remand will necessarily have to determine additional facts regarding temporary disability during the interim time period, and those facts could have a bearing on the commencement date issue as

well. We will not consequently bind the judge with the March 31, 1992, date. *See id.*

### c. *Challenge to Award of 40% Partial Disability*

We decline to review the sufficiency of the evidence with respect to the award of 40% partial disability because Respondents have failed to satisfy the *Martinez* test. *See Martinez*, 115 N.M. at 184–85, 848 P.2d at 1111–12. First, Respondents have failed to set out all favorable and unfavorable evidence. Although Respondents state their argument is "based on uncontradicted medical evidence," Claimant in his answer brief points out contradictory evidence on the issue. *See id.* Second, because of Respondents' failure to mention all evidence bearing on the issue, their argument necessarily fails the other prong of the *Martinez* test, which would require Respondents to show why, on balance, the evidence fails to support the finding made. *See id.*

### 3. *Adequate Medical Care*

Under NMSA 1978, Section 52–1–49(A) (Repl.Pamp.1987), an employer is required to "furnish all reasonable ... medical ... services." Section 52–1–49(B) then states in part:

> In case the employer has made provisions for and has at the service of the worker at the time of the accident adequate medical or related services or facilities and *offers* to furnish these services or facilities during the period necessary, then the employer shall be under no obligation to furnish *additional* medical or related services than those so provided.... (Emphasis added.)

Consequently, Respondents will be relieved of their obligation to pay for any additional independent services if either of these requirements is satisfied.

Respondents first argue that the judge implicitly found that they provided adequate medical care, thus satisfying the first requirement of Section 52–1–49. Respondents support their argument by noting that the judge found that Respondents' physician, Dr. Castillo, told Claimant that he could not do anything more for him, suggested Claimant see someone else for a second opinion if necessary, and then apparently even asked the workers' compensation carrier for permission to send Claimant to another physician.

Claimant, however, directs us to additional findings the judge made which show that Claimant was subsequently treated by several physicians and apparently was treated because of both pain and spasms. Additionally, the judge found that medical care is still presently needed for this pain. Claimant thus maintains that Respondent failed to provide adequate medical care as required under Section 52–1–49.

Respondents further contend that the above mentioned judge's findings and the record show that Dr. Castillo's suggestion for Claimant to receive a second opinion was Respondents' offer to Claimant to receive further medical care, thus satisfying the second requirement under Section 52–1–49. Respondents assert that they are not liable because this offer was not accepted by Claimant as evidenced by the fact that Claimant sought additional care independently.

In response, Claimant argues that under *Montoya v. Anaconda Mining Co.*, 97 N.M. 1, 5–6, 635 P.2d 1323, 1327–28 (Ct.App.1981), failure to provide adequate medical services despite passive expressions of willingness to provide medical services may in fact be interpreted as a failure to do so. Claimant asserts that Dr. Castillo's suggestion that Claimant get a second opinion was merely a passive expression of a willingness to furnish medical treatment, and although Respondents possibly expressed such a willingness, Respondents failed to actually provide further medical services to Claimant.

As a conclusion of law, the judge found that Claimant was entitled to payment of all past medical treatment provided him by the physicians he sought independently. That conclusion, however, cannot stand unless it is supported by a finding that Respondents failed to provide adequate medical care or failed to offer medical care. *See Coleman*, 104 N.M. at 505–06, 723 P.2d at 976–77. Because of the way in which the findings and

conclusions were stated, we cannot ascertain whether the judge did in fact make requisite findings that would render Respondents liable for the medical care sought by Claimant independently. Thus, because the judge made no findings on the question as to whether or not Respondents failed to provide or refused medical care to Claimant, we think it appropriate to remand for a determination of that question.

### 4. The Existence of Insurance Coverage

■ Respondents challenge Finding of Fact No. 3 which states that United States Fidelity and Guaranty Company (USF & G) was the insurance carrier for Payroll Express and Jensen. Respondents argue the record as a whole is devoid of any direct evidence that USF & G contracted with Jensen Logging to provide workers' compensation insurance coverage. While this may be technically correct, we believe that the judge's finding that Claimant was the employee of both Payroll Express and Jensen, coupled with evidence in the record that indicates that payments for insurance were based on a percentage of Claimant's salary paid by Jensen to Payroll Express, resolves the issue.

It appears that Payroll Express may have been a nominal employer established as an entity to carry workers' compensation insurance, to process payroll, and to pay taxes on behalf of the loggers. Because the payment used for workers' compensation insurance came directly from Jensen, we can understand how the judge could have treated Payroll Express and Jensen as one and reasonably inferred both were insured by USF & G. We affirm on this issue.

### 5. Vocational Rehabilitation

The judge found that Claimant is entitled to vocational rehabilitation benefits, consisting of job placement and on-the-job training. Respondents argue that this award must be reversed, first, because after Claimant was released by his doctor, Claimant did not request vocational benefits within 120 days as required under NMSA 1978, Section 52–1–50(E) (Repl.Pamp.1987), and, second, because the evidence would not support the award. We remand as to the first contention and decline to review the latter contention because the need for vocational rehabilitation cannot be determined before the procedural aspect of the case is resolved.

With regard to the notification requirement, we remand on this issue so that the judge can first make a determination as to whether Claimant had been released by his primary treating health care provider as of the date of the hearing. Respondents, in fact, requested a finding on this issue. The judge, however, neglected to make one. Under *DeTevis*, 104 N.M. at 800, 727 P.2d at 565, when findings of fact are requested on a material issue, a judge is required to make such findings. We determine that the release issue is material and thus a finding is required. If Claimant had not been released by his primary treating health care provider as required under Section 52–1–50(E), then his request for vocational rehabilitation was premature and the issue is not ripe for review.

Alternatively, if Claimant had been released, then this issue is ripe for review. Claimant argues that the judge must first determine whether Respondents satisfied the requirements in Section 52–1–50(D) before determining whether Claimant satisfied the requirements in Section 52–1–50(E). Claimant has not, however, shown how this issue was preserved for review. *See* SCRA 1986, 12–216 (Repl.1992). We, therefore, have to assume that either Respondents complied with Section 52–1–50(D) or that Claimant failed to prove non-compliance.

The judge on remand must then determine whether or not a request for vocational rehabilitation was ever made. If a request was made, the judge must subsequently determine whether the request was timely made. Under Section 52–1–50(E), a request for vocational rehabilitation must be made within 120 days from the date of release to be effective. If either of these requirements was not satisfied, then the judge on remand must set aside the award for vocational rehabilitation as required under Section 52–1–50(E).

If the notification requirements were met however, then Claimant may be entitled to vocational rehabilitation. Entitlement to vocational rehabilitation depends upon whether such benefits are necessary to restore the worker to suitable employment. *Apex Lines, Inc. v. Lopez,* 112 N.M. 309, 310, 815 P.2d 162, 163 (Ct.App.1991). The judge on remand, after determining whether procedural requirements were met, would then need to determine whether or not such a benefit is necessary for Claimant.

### 6. *Attorney Fees*

Respondents contend that in a subsequent order on February 10, 1993, the judge neglected to make findings of fact and conclusions of law for an award of attorney fees in the amount of $11,500.00, plus taxes. Respondents argue that an appellate court will not review an award of attorney fees absent findings of fact and conclusions of law, *see Lenz v. Chalamidas,* 109 N.M. 113, 119, 782 P.2d 85, 91 (1989), and contend that the judge is required to enter such findings and conclusions to support the attorney fee award given. We disagree.

Although generally a court must enter findings of fact and conclusions of law to support an award of attorney fees, *see Woodson v. Phillips Petroleum Co.,* 102 N.M. 333, 338–39, 695 P.2d 483, 488–89 (1985), an employer who requests no findings on the issue cannot contest the sufficiency of the evidence to support an award by the Workers' Compensation Administration. *Davis v. Los Alamos Nat'l Lab.,* 108 N.M. 587, 590, 775 P.2d 1304, 1307 (Ct.App.), *cert. denied,* 108 N.M. 433, 773 P.2d 1240 (1989). Here, Respondents have waived specific findings and conclusions because they failed to request or tender findings of fact and conclusions of law until after the order for attorney fees was awarded.

More recently, in *Trujillo v. Hilton of Santa Fe,* 115 N.M. 398, 404, 851 P.2d 1065, 1071 (Ct.App.) *rev'd on other grounds,* 115 N.M. 397, 851 P.2d 1064 (1993), a case dealing specifically with subsequent orders awarding attorney fees, this Court concluded that "[b]y failing to file proposed findings and conclusions on the specific factors to be considered in determining the fees, Respondents waived findings and conclusions on those issues."

Accordingly, we affirm the award for attorney fees of $11,500.00 plus taxes.

### 7. *Reimbursement*

Once the judge computes the average weekly wage and makes a determination of an award from the date of the accident until March 31, 1992, then a determination as to the extent of reimbursement can be determined. On remand, the judge should make such a determination in addition to addressing the other issues already discussed.

### *CONCLUSION*

Based on our discussion above, we remand for a computation of Claimant's average weekly wage using the guidelines set forth in the opinion. We also remand for the judge to determine temporary disability between the date of the accident on July 26, 1990, and March 31, 1992, the date from which the award of 40% partial disability was to commence. Additionally, we remand for a determination of whether Respondents failed to provide or failed to offer adequate medical care, and whether Claimant is entitled to rehabilitation based on compliance or noncompliance with Section 52–1–50. Once those determinations have been made, the judge can determine any reimbursement. We affirm the remaining issues.

Affirmed in part; reversed and remanded in part.

**IT IS SO ORDERED.**

APODACA and BLACK, JJ., concur.