1999-NMCA-020

973 P.2d 850

**Patricia YEAGER, Worker–Appellee,**

v.

**ST. VINCENT HOSPITAL, Employer–Appellant.**

**No. 18,191.**

Court of Appeals of New Mexico.

Oct. 23, 1998.

Certiorari Denied, No. 25,521, Jan. 29, 1999.

Rod Dunn, Dunn Law Offices, Albuquerque, for Worker–Appellee.

Paula G. Maynes, Montgomery & Andrews, P.A., Santa Fe, for Employer–Appellant.

## OPINION

FLORES, Judge.

{1} St. Vincent Hospital (Employer) appeals a workers' compensation order awarding benefits to Patricia Yeager (Worker) for 26 percent permanent partial disability. Employer raises three issues on appeal: (1) the Workers' Compensation Judge (WCJ) erred in excluding the medical testimony of Dr. Tolber and Dr. Fisher, (2) the WCJ's

finding of permanent partial disability is not supported by substantial evidence, and (3) the WCJ erred by assigning an impairment rating herself. Because we reverse on Employer's third issue, we need not address Employer's first two points of error. We reverse and remand for entry of judgment in favor of Employer.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} Worker was an employee in Employer's hospital laboratory when she was exposed to a strong chemical odor in the laboratory on March 26, 1995. This exposure caused tightness in her chest and throat, headache, difficulty breathing, coughing, and wheezing. On the day of the exposure, Worker was treated in the emergency room for her symptoms and was released. She attempted to return to work in the lab several times, but was unsuccessful each time because she reacted to chemical odors in the workplace.

{3} Prior to her exposure to chemicals, Worker had numerous respiratory problems, including asthma, bronchopulmonary aspergillosis, and allergies, but was physically active and participated in step aerobics. Since the exposure, Worker has not been able to participate in such activities and has had to take prednisone, a steroid used to treat certain allergic and inflammatory diseases, much more frequently than before the exposure. In addition, she has been unable to tolerate chemical fumes since the exposure.

{4} Worker filed a claim for permanent partial disability benefits based on her inability to work in Employer's environment. During discovery, Employer's insurance adjuster and risk manager engaged in ex parte communications with Dr. Tolber and Dr. Fisher, who had treated Worker after the chemical exposure. Ruling that Employer's conversations went beyond the scope of Worker's releases, the WCJ granted Worker's Motion in Limine to exclude the depositions of these two doctors. Although the WCJ excluded the opinions of these experts, she did not exclude the results of the objective medical tests they performed. Thereafter, the WCJ appointed an independent medical examiner, Dr. Dinesman, to examine and

diagnose Worker. Dr. Dinesman did so, concluding that Worker's exposure to chemical odors caused her impairment. However, Dr. Dinesman refused to assign an impairment rating.

{5} In addition to Dr. Dinesman's deposition testimony, Worker's personal physician, Dr. Krohn, was deposed. The WCJ did not find Dr. Krohn's testimony credible, and therefore disregarded the doctor's testimony, with one exception: the WCJ accepted Dr. Krohn's determination of Worker's date of maximum medical improvement. After a hearing on the merits, the WCJ awarded Worker permanent partial disability benefits of 26 percent.

{6} As previously noted, Employer contends that: (1) the WCJ erred in excluding the testimony of two doctors, (2) there is insufficient evidence of causation to support the WCJ's determination of permanent partial disability, and (3) the WCJ erred by assigning an impairment rating herself. On the other hand, Worker argues that this Court should dismiss Employer's appeal because Employer failed to file requested findings of fact and conclusions of law, and because Employer did not follow the two-step process required by *Martinez v. Southwest Landfills, Inc.*, 115 N.M. 181, 184–85, 848 P.2d 1108, 1111–12 (Ct.App.1993). We determine that Employer's appeal is properly before this Court. We also determine that the WCJ erred by assigning an impairment rating in this case. Because we reverse on this issue, we need not address the remaining issues raised by Employer. *See Crist v. Town of Gallup*, 51 N.M. 286, 290, 183 P.2d 156, 158 (1947) (holding that appellate court need not address questions unnecessary for a decision), *overruled on other grounds by Hoover v. City of Albuquerque*, 58 N.M. 250, 252, 270 P.2d 386, 387 (1954).

## DISCUSSION

{7} Initially, we discuss Worker's argument that this Court is barred from considering this appeal. Worker urges us not to consider Employer's appeal for two reasons. First, Worker argues that Employer effectively waived its right to appeal because it did not file requested findings of fact and

conclusions of law. Second, Worker insists that Employer's appeal is barred because Employer did not satisfy the two-step process required by *Martinez*. *Id.* We disagree with both arguments.

 {8} Generally, "a party's failure to request findings and conclusions on specific factors or issues it wishes to be considered results in the waiver of any argument it may wish to raise on appeal as to those issues." *Cordova v. Taos Ski Valley, Inc.*, 121 N.M. 258, 263, 910 P.2d 334, 339 (Ct.App.1995). "However, where the record is sufficiently clear to allow the appellate court to clearly understand which issues were raised and argued to the trial court, and not abandoned, the appellate court may address these issues on their merits." *Id.* Here, the issues raised by Employer on appeal were obviously raised below and not abandoned. For example, Employer's position on the exclusion of the doctors' testimonies because of ex parte communications was clear to the court because Employer filed a response to Worker's Motion in Limine. In addition, Employer's Answer to Worker's Complaint argued that there was no causal connection between Worker's health problems and her exposure to a chemical odor. Finally, the WCJ's findings of fact include a section outlining the issues and evidence presented. This section accurately depicts all of the issues that Employer raised below and includes each issue that Employer now raises on appeal. Thus, we conclude that the issues on appeal were raised by Employer below, and that Employer's failure to request findings and conclusions does not bar review by this Court in this instance.

 {9} Worker relies on *Apodaca v. Payroll Express, Inc.*, 116 N.M. 816, 867 P.2d 1198 (Ct.App.1993), to argue that we should dismiss Employer's sufficiency of the evidence claims because Employer did not satisfy the two-step process described in *Martinez*, 115 N.M. at 185, 848 P.2d at 1112. Worker fails to recognize that this Court may, in its discretion, review or reject an issue on appeal when the appellant has not followed the *Martinez* requirements. *See Apodaca*, 116 N.M. at 819, 867 P.2d at 1201 ("Under *Martinez*, we *may* decline to review

where a party challenging the evidence (1) fails to set forth the substance of *all* evidence bearing on the question, and (2) fails to demonstrate why the evidence under the whole record does not support the finding.") (first emphasis added).

{10} Here, Worker argues that Employer has not provided this Court with all the relevant evidence bearing on the questions of causation and impairment. Although it may be the case that Employer has not provided every detail of each piece of evidence, and has not cast each piece of evidence in the light most favorable to the WCJ's decision, Employer has presented enough evidence to allow this Court to understand the issues and the evidence without having to conduct an overly-intensive search of the record. Because *Martinez* is intended to protect this Court from having to search the entire record when a party has provided a wholly inadequate recitation of the evidence and the lower court's rationale, and because the evidence presented by Employer prevents the need to conduct such a searching review of the record, we hold that our decision in *Martinez* would not be offended by our addressing the merits of this case.

*The WCJ Should Not Have Assigned an Impairment Rating When There Was No Testimony on Impairment from a Pulmonologist and When Worker Had Asthma and Bronchopulmonary Aspergillosis Prior to Her Chemical Exposure*

 {11} Employer argues that Worker was not entitled to workers' compensation benefits because there was no expert medical testimony on the degree of impairment attributable to her workplace injury. Employer argues that the WCJ improperly assigned an impairment rating herself after examining the complicated medical testimony and applying the American Medical Association *Guides to the Evaluation of Permanent Impairment* (4th ed.1993) [hereinafter AMA *Guides*]. Whether a WCJ may assign an impairment rating in the absence of expert testimony as to the degree of impairment has not been answered by the courts of New Mexico.

{12} Under our Workers' Compensation statute, an

"impairment" means an anatomical or functional abnormality existing after the date of maximum medical improvement as determined by a medically or scientifically demonstrable finding and based upon the most recent edition of the American medical association's guide to the evaluation of permanent impairment or comparable publications of the American medical association.

NMSA 1978, § 52–1–24(A) (1990) (effective January 1, 1991). Thus, our statute requires the use of the AMA *Guides* when determining whether a worker is impaired, and if impaired, the degree of worker's impairment. We recognize that the AMA *Guides* were specifically developed to bring greater objectivity to estimating the degree of a worker's permanent impairment, *see Madrid v. St. Joseph Hosp.*, 1996–NMSC–064, ¶ 18, 122 N.M. 524, 928 P.2d 250, but note that the AMA *Guides* do not establish a rigid formula that must be followed. Rather, they provide a guide that will help make the determination of permanent impairment more objective. *See id.* ¶ 19.

{13} Given that the AMA *Guides* are to be applied in a flexible manner, New Mexico courts have recognized that a WCJ has some discretion in applying the AMA *Guides* and determining the appropriate impairment rating. Specifically, our courts have held that a WCJ may choose between experts' conflicting opinions of a worker's impairment rating, *see Madrid*, 1996–NMSC–064, ¶ 19, 122 N.M. 524, 928 P.2d 250, may assign a rating when the most recent edition of the AMA *Guides* does not address a particular type of injury or ailment, *see Peterson v. Northern Home Care*, 1996–NMCA–030, ¶ 18, 121 N.M. 439, 912 P.2d 831, and may discount or lower an expert's impairment rating when evidence casts doubt on the worker's reports of pain. *See id.* ¶ 10. However, these cases do not recognize an unfettered discretion in the WCJ to determine the impairment rating. Rather, they recognize that a WCJ may assign an impairment rating in three limited circumstances.

{14} Despite the limited circumstances in which a WCJ may assign an impairment rating, Worker argues that the WCJ was entitled to do so here, in the absence of medical testimony on the percentage of impairment, because the AMA *Guides* recognize that "any knowledgeable person can compare the clinical findings with the *Guides* criteria and determine whether or not the impairment estimates reflect those criteria." AMA *Guides*, § 2.1, at 2/8. According to Worker, the WCJ is a "knowledgeable person" who may compare the expert's clinical findings to the AMA *Guides* and assign an impairment rating once the expert concludes that a worker has an impairment caused by a workplace accident. Worker's argument is overbroad.

{15} Although the WCJ may be capable of utilizing the AMA *Guides* and assigning an impairment rating in many cases, we disagree that the WCJ was capable of doing so here. The AMA *Guides* themselves recognize that the presence of certain respiratory ailments, including asthma, complicates the quantification of worker's postaccident respiratory impairment. Accordingly, "[i]mpairments in persons with [asthma, hypersensitivity pneumonitis, pneumoconiosis, and lung cancers] should be evaluated by physicians with expertise in lung disease, *and the impairment [rating] should be left to the physician's judgment.*" AMA *Guides*, § 5.3, at 5/164 (emphasis added).

{16} Here, consistent with the AMA *Guides*, Dr. Dinesman, who was not a pulmonologist, refused to assign an impairment rating precisely because he felt that only a lung specialist could assess Worker's impairment. Given the interplay between Worker's preexisting medical conditions and postexposure symptoms, assigning an impairment rating would require more than a mechanical comparison of the objective test results with the AMA *Guides*. Where, as here, both the AMA *Guides* and the medical expert recognize that only a specialist can accurately evaluate this type of impairment, it is unreasonable to think that a layperson would be capable of assigning an appropriate impairment rating. Thus, we hold that the WCJ erred by assigning an impairment rating in this case.

{17} Our holding today does not question the WCJ's right to choose between

experts' conflicting impairment ratings, nor the WCJ's right to assign a rating in the absence of an AMA guideline. However, we decline to allow the WCJ to assign a rating in cases where no lung specialist has provided an impairment rating and where the worker has one of the preexisting pulmonary conditions specifically listed in the AMA *Guides* as requiring a lung specialist. AMA *Guides*, § 5.3, at 5/164. We do not hold that the WCJs may never assign an impairment rating because we recognize that there are impairments that can be objectively measured and that do not interact with other medical conditions. In those cases, a WCJ may compare the objective clinical findings to the AMA *Guides* and assign an impairment rating without error. However, in cases that require some medical judgment in order to determine the degree of impairment, the WCJ may not determine the worker's impairment rating without a medical expert opinion. Here, the testimony of a lung specialist is required. Thus, we reverse the WCJ's finding of a 20 percent impairment rating and remand so that the WCJ may enter judgment in favor of Employer.

 {18} Worker suggests that our remand should allow a pulmonologist to provide an impairment rating. We will not remand for additional testimony because Worker did not satisfy her initial burden of providing the medical evidence necessary to prove that she had a compensable claim, *see Tafoya v. Kermac Nuclear Fuels, Corp.*, 71 N.M. 157, 160, 376 P.2d 576, 578 (1962), when she failed to provide a lung specialist's assignment of an impairment rating. *Compare* § 52–1–24(A) (explicitly requiring reliance on the AMA *Guides* ) *with* AMA *Guides*, § 5.3, at 5/164 (requiring a lung specialist to assign a rating when the worker's injury compounds certain preexisting pulmonary conditions).

{19} Worker's burden to provide evidence of her impairment as rated by a lung specialist was clear when she brought her case. Indeed, Worker appears to have understood that a specialist was required. During a pretrial hearing on whether to appoint an independent medical examiner (IME), Worker's attorney stated that the IME should be "a doctor who has expertise diagnosing

RADS [Reactive Airway Disease Syndrome] and occupational asthma." Nevertheless, when the WCJ told the parties that she intended to appoint Dr. Dinesman, who was not a pulmonologist, and that she would give the parties an opportunity to object to Dr. Dinesman's appointment, Worker did not object. Thus, Worker understood that a specialist was necessary to her case, but failed to provide a specialist and failed to object to the appointment of an IME that was not a specialist. Under these circumstances, remanding for the testimony of a specialist would simply give Worker a second chance to assert her claim for disability benefits after she initially failed to satisfy her burden at trial. Accordingly, we remand simply to allow the WCJ to enter judgment in Employer's favor.

*CONCLUSION*

{20} We reverse the WCJ's assignment of an impairment rating and remand to allow the WCJ to enter an order in accordance with this opinion.

{21} **IT IS SO ORDERED.**

APODACA and WECHSLER, JJ., concur.