2008-NMCA-122

192 P.3d 799

**RAPID TEMPS, INC., a New Mexico corporation, Plaintiff–Appellee,**

v.

**Linda LAMON and Sysprog, Inc., a Missouri corporation, Defendants–Appellants.**

No. 26,834.

Court of Appeals of New Mexico.

Aug. 7, 2008.

Yarbro & Associates, P.A., Roger E. Yarbro, J. Bradley Nichols, Cloudcroft, NM, for Appellee.

Martin Law Firm, W.T. Martin, Jr., Lane T. Martin, Carlsbad, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} This case involves the enforcement of a covenant not to compete between Defendant Linda Lamon (Lamon) and her former employer, Plaintiff Rapid Temps, Inc. (RTI). Lamon was terminated from RTI and began working for a competing firm. RTI brought suit in the district court to enforce the covenant not to compete and for damages arising from Lamon's alleged misappropriation of trade secrets. Following a bench trial, the district court granted RTI's requested relief. Lamon challenges the district court's enforcement of the covenant and award of damages on a variety of grounds. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEEDINGS

{2} RTI is a staffing company based in Albuquerque and Artesia, New Mexico that provides placement services for medical professionals and medical facilities throughout the United States. RTI has developed and maintained a database of information about medical professionals and medical facilities to give RTI an advantage over its competitors. The creation and maintenance of this database has come at great expense to RTI.

{3} In the spring of 1999, Lamon responded to an advertisement for a recruiter position that RTI posted on the Internet. Over the course of several interviews, RTI representatives informed Lamon about the covenant not to compete that is part of RTI's standard employment agreement, which all RTI employees are required to sign. Lamon indicated that she did not object to the covenant not to compete, and she accepted the recruiter position at RTI. Lamon signed an employment agreement (the Agreement) on September 17, 1999.

{4} Following its hiring of Lamon, RTI began to experiment with its compensation system for its employees. More specifically, RTI implemented a variety of commission-based compensation systems from 2000 to 2002. In 2001, Lamon's commission and base salary were the highest among all recruiters at RTI.

{5} Lamon did not get along with her co-workers and was unhappy for several years while working at RTI. Beginning in 2002, the performance of Lamon's department, Department 06, began to decline and continued to decline throughout the remainder of her employment. Lamon began to search for a new job in early 2002, while she was still employed at RTI. Lamon's employee performance evaluations indicated that her job performance declined between 2002 and 2004.

{6} RTI terminated Lamon on June 18, 2004. Evidence produced at trial showed that Lamon, without permission from RTI, copied dozens of RTI computer files to her home computer with the intent of using the information to compete with RTI. Lamon began working for Defendant SysProg, Inc. (SysProg) on July 1, 2004. At that time, the President, and sole owner of SysProg was Tom Findley, who is Lamon's brother. Lamon solicited a majority of RTI's contacts while working for SysProg.

{7} RTI filed a complaint for damages and injunctive relief against Lamon and SysProg on September 17, 2004. RTI sought an injunction preventing Lamon and SysProg from (1) using RTI's trade secrets and confidential information, (2) violating the covenant not to compete in the Agreement, and (3) soliciting RTI's clients based on information Lamon acquired at RTI. RTI also sought an order requiring Lamon and SysProg to deliver for destruction all materials embodying RTI's trade secrets and confidential information. RTI further requested compensatory damages for misappropriation of trade secrets, breach of confidential relationship, breach of contract, interference with contract, and unfair competition, as well as exemplary damages pursuant to NMSA 1978, § 57-3A-4(B) (1989). Finally, RTI requested costs and attorney fees.

{8} Lamon and SysProg timely filed an answer and incorporated a counterclaim against RTI by Lamon. In her counterclaim, Lamon sought compensatory and punitive damages in connection with RTI's alleged failure to compensate Lamon adequately for the work she performed at RTI. Lamon also sought attorney fees and costs.

{9} The matter proceeded to a bench trial in June 2005. Following trial, the parties submitted proposed findings of fact and conclusions of law to the district court. The district court entered its findings of fact and conclusions of law on August 1, 2005. The district court's findings of fact and conclusions of law are substantially the same as those submitted by RTI, which numbered in the hundreds, although the court did not adopt eleven of RTI's requested findings and conclusions. Some of the district court's findings and conclusions internally reference one another, although the number references are incorrect.

{10} On August 5, 2005, Lamon filed a petition for Chapter 7 relief in the United States Bankruptcy Court, which resulted in an automatic stay of proceedings in the present case. The district court therefore did not enter its final judgment and order until May 18, 2006. The judgment adopts the district court's findings and conclusions in their entirety. The judgment also awards RTI compensatory damages against Lamon and SysProg in the amount of $18,137.08, and exemplary damages against Lamon under Section 57-3A-4 in the amount of $36,274.16 for "the willful and malicious nature of her misappropriation of [RTI's] trade secrets." The judgment further provides the injunctive relief sought by RTI in its complaint, although the district court ordered that the three-year prohibition against competition set forth in the Agreement take effect against Lamon beginning from the date of judgment instead of from the date of her termination. Finally, the judgment awards RTI attorney fees and costs.

{11} Lamon timely filed a notice of appeal. Lamon urges us to reverse the district court's judgment on the following grounds: (1) the covenant not to compete is broader than necessary to protect RTI's legitimate interests, and is therefore unenforceable; (2) the district court erred in awarding compensatory and punitive damages for Lamon's alleged misappropriation of trade secrets because RTI had no trade secrets requiring protection; (3) the district court's conclusion that Lamon misappropriated trade secrets was in error because the conclusion was

based on facts the district court previously ruled inadmissible, and because the conclusion was not supported by substantial evidence; and (4) the district court erred by ordering that the three-year prohibition from competition begin to run from the date of judgment. Additionally, Lamon argues that we should apply heightened scrutiny to the district court's decision because the district court's findings and conclusions demonstrate that it did not exercise independent judgment in arriving at that decision.

{12} We consolidate Lamon's claims into two main issues for review. We first examine whether the district court erred by enforcing the covenant not to compete beginning on the date of judgment. We conclude that the covenant not to compete began to run from the date of Lamon's termination and has now expired. As a result, we do not address Lamon's claims regarding the reasonableness of the covenant. They are now moot. We next consider whether substantial evidence supports the district court's award of compensatory and punitive damages against Lamon for misappropriation of trade secrets. We address summarily Lamon's assertion that the district court did not exercise independent judgment.

## DISCUSSION

### 1. The District Court Erred by Extending the Time Limit of the Covenant Not to Compete

{13} Generally, "[a] complaint seeking injunctive relief is directed to the sound discretion of the trial court." *Smart v. Carpenter*, 2006–NMCA–056, ¶ 6, 139 N.M. 524, 134 P.3d 811. "However, the trial court abuses discretion when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Aragon v. Brown*, 2003–NMCA–126, ¶ 9, 134 N.M. 459, 78 P.3d 913. In the present case, the question of when the three-year restriction against competition began to run is a matter of contract interpretation subject to de novo review. *Smith & Marrs, Inc. v. Osborn*, 2008–NMCA–043, ¶ 10, 143 N.M. 684, 180 P.3d 1183 ("We review a district court's interpretation of an unambiguous contract de novo."

(internal quotation marks and citation omitted)).

{14} Lamon maintains that the district court erred by extending the time limitation contained in the covenant not to compete. She argues that the extension resulted from the district court's order enforcing the covenant's three-year period of restriction beginning on the date of judgment, while the covenant itself calls for the three-year period to begin on the date of Lamon's termination from RTI. Lamon asserts that the district court was without authority to enlarge the time limit of the covenant not to compete. RTI did not respond to this assertion in its answer brief.

{15} The provision of the Agreement containing the covenant not to compete provides, in relevant part, as follows:

> After termination of this Agreement, whether with or without cause and whether initiated by Employee or [RTI], Employee agrees that *for a period of three (3) years thereafter*, Employee will not participate directly or indirectly, personally or as an agent, associate, employee, partner or manager, or otherwise, of another, in the ownership, management, operation, or control of any business similar to the business currently operated or planned by [RTI] if such business provides services within those states in which [RTI] has been actively engaged in operating its business[.]

(Emphasis added).

{16} Lamon cites the case of *Wilson v. Chemco Chem. Co.*, 711 S.W.2d 265 (Tex.App. 1986) in support of her position that the district court erred by extending the time period of the covenant. In *Wilson*, the Texas Court of Appeals held that the district court erred in enforcing a covenant not to compete beginning on the date of judgment where "[t]he covenant's own terms provide that it is to run for one year from termination of the agreement." *Id.* at 268.

{17} We agree with the reasoning of the court in *Wilson*. The covenant not to compete in this case plainly states that it is to go into effect upon termination of the Agreement. We therefore conclude that, as a matter of law, the three-year restriction on

competition in this case went into effect on the date of Lamon's termination from RTI, which was June 18, 2004. Accordingly, the covenant expired on June 18, 2007, and is no longer in force. We reverse the district court's judgment insofar as it enjoins Lamon from working in the medical staffing industry for a three-year period starting on the date of the judgment.

## 2. Substantial Evidence Supports the District Court's Award of Damages for Lamon's Misappropriation of Trade Secrets

{18} Lamon challenges the district court's award of compensatory and punitive damages to RTI on two grounds. First, Lamon argues that RTI had no trade secrets in need of protection. Second, Lamon maintains that the district court erroneously concluded that she misappropriated RTI's information based on evidence that the district court ruled inadmissible or irrelevant.

{19} We review the district court's findings of fact for substantial evidence. *Allen v. Timberlake Ranch Landowners Ass'n*, 2005-NMCA–115, ¶ 13, 138 N.M. 318, 119 P.3d 743. We review the district court's application of those facts to the law de novo. *Id.* "We resolve all disputed facts and indulge all reasonable inferences in favor of the trial court's findings." *Id.*

## A. RTI's Proprietary Information Constituted a Trade Secret

{20} A plaintiff's entitlement to damages for the misappropriation of the plaintiff's trade secret is governed by the Uniform Trade Secrets Act, which is codified at NMSA 1978, §§ 57–3A–1 to –7 (1989). Section 57–3A–2(D) defines a "trade secret" as

information, including a formula, pattern, compilation, program, device, method, technique or process, that:

(1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Section 57–3A–2(B) defines "misappropriation" of a trade secret as:

(1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) disclosure of use of a trade secret of another without express or implied consent by a person who:

(a) used improper means to acquire knowledge of the trade secret; or

(b) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: 1) derived from or through a person who had utilized improper means to acquire it; 2) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or 3) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(c) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake[.]

Section 57–3A–4 sets forth the damages available to a plaintiff for the misappropriation of the plaintiff's trade secret, and provides that:

A. Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a . . . [complainant] is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by a misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

B. If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not to exceed twice any award made under Subsection A of this section.

{21} The district court's findings and conclusions with respect to Lamon's alleged misappropriation of RTI's trade secrets are attached as an Appendix to this Opinion.

{22} Lamon cites several cases in support of her position that RTI had no trade secrets in need of protection. First, Lamon cites *Insure New Mexico, LLC v. McGonigle*, 2000–NMCA–018, ¶ 18, 128 N.M. 611, 995 P.2d 1053, for the proposition that "[g]eneral skills and knowledge do not rise to the level of trade secrets." We infer from Lamon's citation to this statement in *McGonigle* that she is arguing that the information she allegedly misappropriated amounted to no more than general skills and knowledge. Lamon next cites two cases from other jurisdictions holding that an employee's recollection of customer needs, preferences, and business habits cannot be considered a trade secret. *See, e.g., EarthWeb, Inc. v. Schlack*, 71 F.Supp.2d 299, 315 (S.D.N.Y.1999) ("It is well established that an employee's recollection of ... specific needs and business habits of particular customers is not confidential") (internal quotation marks and citations omitted); *Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F.Supp. 547, 558 (E.D.N.Y.1995) ("[I]nformation concerning customer preferences and ordering patterns could easily be recalled by [the Plaintiff] or obtained by contacting those customers directly. Accordingly, that information cannot be deemed a trade secret"). Finally, Lamon cites *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill.App.3d 557, 175 Ill.Dec. 58, 599 N.E.2d 1072, 1081 (1992), for the proposition that a staffing firm does not possess a trade secret when client information can be easily ascertained by consulting a telephone or specialized directory and placing a phone call.

■ {23} None of the cases Lamon cites are on point. The district court found that Lamon misappropriated information contained in RTI's client database, which was developed over many years and at considerable expense. Lamon has not set forth any

evidence demonstrating that RTI's database was not the product of such time and expense, which is her burden on appeal. *Cf. Yeager v. St. Vincent Hosp.*, 1999–NMCA–020, ¶ 9, 126 N.M. 598, 973 P.2d 850 (holding that a reviewing court may reject an issue on appeal when the appellant "fails to set forth the substance of *all* evidence bearing on the question, and ... fails to demonstrate why the evidence under the whole record does not support the finding" (internal quotation marks and citation omitted) (first emphasis added)). Construing the facts in favor of the district court's findings, the information contained in the database goes beyond Lamon's general skills and knowledge, her recollection of client preferences, and information that one could easily obtain by consulting a phone directory. We therefore conclude that substantial evidence supports the district court's conclusion that RTI's database constituted a trade secret under Section 57–3A–2(D).

**B. There is Substantial Evidence that Lamon Misappropriated RTI's Trade Secrets**

{24} Lamon next contends that there are evidentiary flaws underlying the district court's factual findings regarding her alleged misappropriation of the database. Lamon specifically challenges the district court's findings of fact Nos. 204 through 210, which concern evidence derived from Lamon's home computer. Lamon claims that these findings are based on evidence the district court ruled inadmissible or acknowledged was irrelevant. Lamon also asserts that she kept the list referred to in Finding of Fact No. 191 for the purpose of keeping track of her commissions.

{25} Lamon argues that the findings regarding her computer were based on the testimony of Tim Harvey, Vice President of RTI. Lamon objected to Harvey's testimony regarding Lamon's computer on the ground that Harvey was not designated as a computer expert. The district court sustained the objection, but allowed Harvey to testify as a lay witness regarding what he observed on Lamon's hard drive and several removable "Zip" discs that came into evidence. Lamon also objected to the testimony regarding the

files on her computer for lack of foundation regarding the accuracy of the times and dates of those files; the district court overruled the objection. Finally, Lamon objected to Harvey's testimony that apparently confused the file extension term "zip" with the removable media "Zip" referred to above. The district court sustained the objection on the grounds that the testimony was irrelevant unless RTI could show what was being "zipped in and zipped out." In sum, Lamon argues that the district court committed reversible error by relying on evidence it ruled inadmissible or irrelevant.

{26} RTI responds that Harvey's lay testimony regarding his observations was admissible under Rule 11–701 NMRA. RTI asserts that Harvey did not need to be a computer expert to present his opinions that were rationally based on his perceptions. RTI also notes that Finding of Fact No. 210 is based on Lamon's testimony, not Harvey's. RTI further argues that there was evidence beyond that which supports Findings of Fact Nos. 204 through 210 demonstrating that Lamon misappropriated RTI's confidential information. For example, Lamon: (1) provided contact directories and contact lists in response to RTI's discovery requests; (2) admitted that she took information from RTI; and (3) admitted compiling and taking the list referred to in Finding of Fact No. 191, which the district court determined she could not have used in order to calculate her commissions.

■ {27} We do not find Lamon's argument persuasive. First, Lamon has not explained why Harvey's testimony was not admissible as lay witness testimony under Rule 11–701. Second, we find the alleged lack of foundation regarding the dates and times of computer files to be irrelevant; the district court could properly conclude that Lamon took the files without permission if the files were found on her computer or Zip discs that she had used. With respect to the alleged confusion between "zip" files and "Zip" discs, Lamon has not adequately explained how this confusion resulted in error by the district court. Finally, the district court was free to disbelieve Lamon's testimony that she took the list referred to in

Finding of Fact No. 191 in order to calculate her commissions. *See Santa Fe Pac. Gold Corp. v. United Nuclear Corp.,* 2007–NMCA–133, ¶ 33, 143 N.M. 215, 175 P.3d 309 (holding that questions of credibility are reserved for the district court as fact finder). In light of our deferential standard of review, and the additional evidence cited by RTI in support of the district court's conclusion, we conclude that substantial evidence supports the district court's determination that Lamon misappropriated RTI's trade secrets. We therefore affirm the district court's award of compensatory and punitive damages arising from Lamon's misappropriation of RTI's trade secrets.

### 3. The District Court Was Entitled to Adopt Most of RTI's Requested Findings and Conclusions

■ {28} Lamon challenges the district court's near-verbatim adoption of 285 of RTI's 296 requested findings and conclusions. Lamon cites *Pollock v. Ramirez,* 117 N.M. 187, 192, 870 P.2d 149, 154 (Ct.App. 1994), for the proposition that "the trial court is required to exercise independent judgment in arriving at its decision and should generally avoid verbatim adoption of all the findings and conclusions submitted by a party." We stated in the same case, however, that "[t]he adoption of verbatim findings does not constitute reversible error if the trial court's findings are supported by proper evidence in the record." *Id.* As we have already concluded in this Opinion, Lamon has failed to demonstrate that the district court's findings and conclusions are not supported by substantial evidence. Moreover, the district court rejected eleven of RTI's proposed findings and conclusions, which demonstrate that the district court only adopted those findings and conclusions that it believed were supported by the record. We conclude that the district court exercised independent judgment in reaching its decision and, therefore, our analysis of the merits of this appeal remains unchanged.

### CONCLUSION

{29} The district court's judgment is reversed insofar as it enjoins Lamon from

working in the medical staffing industry. The district court's award of compensatory and punitive damages to RTI is affirmed. The case is remanded for proceedings consistent with this Opinion.

{30} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and IRA ROBINSON, Judges.

## APPENDIX

[Findings of Fact]

4.   ... [RTI] developed a method of business, over many years, that provides an advantage over its competitors and, at considerable expense it has developed, and most importantly maintains a current database of information about medical professionals and medical facilities that gives it an edge in a very competitive marketplace.

5.   ... [RTI] buys contact lists, that are very expensive, to allow its recruiters to make new contacts with medical professionals and pays for membership to multiple websites.

. . . .

25.   In 2002[RTI] introduced an Employee Handbook, which ... Lamon read.... The Handbook provided in part:

. . . .

*Standards of Conduct:*

.... Employees are prohibited from furnishing [RTI's] employee or competitor information to any individual, business or entity without first consulting with and acquiring the approval of their department supervisor.

*Employee Conduct and Work Performance:*

.... Obtain approval from a supervisor before removing any Company property for Company or personal use.

*Confidentiality of Company Information:*

.... Our agreement with you regarding the Company's confidential information is contained in the Employment Agreement you entered into with us. You should review the Employment Agreement again to make sure you understand the same.

. . . .

*Prohibited Activities/Prohibited Uses:*

.... Sending, printing, or otherwise disseminating [RTI's] proprietary data, or any other information deemed confidential by [RTI], to unauthorized persons.

. . . .

47.   [RTI's] database and other confidential information concerning its medical professionals and medical facilities is a compilation of data that has independent economic value and, as compiled, is not generally known to and not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use. Access to the information in this database could provide a competitive advantage to competitors of [RTI].

48.   The confidential information consists of current, detailed facts on the medical professionals and medical facilities secured through years of business effort, advertising expenditures and expenses incurred in the compilation procedure, that is, the selection of the categories of information that is critical in placement; the results of this work cannot be duplicated except by improper means.

49.   This confidential information regarding medical professionals and medical facilities includes their preferences and willingness to do business in a certain way and is available from these sources only after gaining their confidence and trust over a prolonged period of time.

50.   The nature of the temporary medical staffing industry requires the exercise of considerable skill and energy in finding and making contacts with prospective medical professionals and medical facilities. The name and telephone number of a medical professional or facility is only the beginning of the data that is required to suc-

cessfully place a medical professional at a medical facility.

51. [RTI] has developed, at considerable expense, a business system for efficiently and cost-effectively operating its business; this system ... constitutes its proprietary and confidential information[.]

52. Additionally, [RTI] employed ... a database expert ... to create databases that are more useable and efficient....

. . . .

59. The compilation of information contained within [RTI's] database of medical professional[s] and medical facilities is not generally known by, or readily ascertainable by, persons outside of [RTI].

. . . .

61. While employed at [RTI], ... Lamon regularly used [RTI's] proprietary database to obtain information regarding medical professionals and medical facilities.

. . . .

91. Since the termination of ... Lamon's employment with [RTI], she has used information regarding medical professionals and/or medical facilities obtained from [RTI's] database for making contacts.

. . . .

93. ... Lamon demonstrated by soliciting a majority of [RTI's] medical professionals and medical facilities while working for [SysProg] that her best prospects were medical professionals and medical facilities she employed while at [RTI].

94. ... Lamon misappropriated trade secrets and confidential information from [RTI].

95. ... Lamon claims she acquired some of her information on medical professionals, in part, from the ARRT list. The ARRT registry is proprietary information, meaning that it is licensed to the company that purchases it, and cannot be shared. The cost of the ARRT registry was $34,000.00.

96. The ability to obtain some of this information from the Internet, various lists, etc., doesn't allow someone to immediately commence competition against [RTI] without obtaining other information regarding the medical technologists/technicians and medical facilities, and compiling the data.

. . . .

126. [RTI] has invested millions of dollars since its inception in gathering information to include in its database and in creating its relationships with medical facilities and medical professionals nationwide in order to gain a competitive advantage in the industry.

. . . .

149. A substantial majority of medical facilities and medical professionals contacted by ... Lamon while working for [SysProg] previously worked for [RTI] and were in its database.

. . . .

162. ... Lamon used confidential and copyrighted information of [RTI] while working at [SysProg].

. . . .

167. [RTI] suffered damages due to ... Lamon's misappropriation of its trade secrets and confidential information.

. . . .

170. [RTI] suffered damages to its good will as a result of ... Lamon's misappropriation of its confidential information and trade secrets.

171. [RTI] suffered damages in the form of lost profits as a result of unfair competition from ... Lamon and [SysProg].

. . . .

174.... Lamon's conduct was intentional, willful, malicious and deserving of punitive damages.

. . . .

191. ... Lamon compiled and removed, without permission, the entire list of

Medical Facilities worked and employees of the Radiology department (department 06) from the period of 1999 to the end of 2003, including preferences of the medical facilities and medical professionals.

192. The material described in Finding of Fact # [191] above is critical information for a medical staffing agency and provides an individual with the necessary information to immediately commence competition against [RTI].

. . . .

204. . . . Lamon's computer hard drive showed that a Zip drive has been hooked up to her home computer as early as 2001.

205. . . . Lamon's home computer hard drive shows several Excel files containing [RTI's] confidential information, which are identical to . . . Zip disk # 5 in evidence.

206. . . . Lamon's home computer also shows a file that contains contact information for [RTI] . . . in a template identical to a template on Zip disk # 2 in evidence.

207. . . . Lamon's home computer hard drive shows an ACT database file that is identical to an ACT database file that is contained on Zip disk # 1 in evidence.

208. In the "recent documents folder" on . . . Lamon's home computer hard drive, it shows the use of a floppy disk for the location of a file named "staffing.zip."

209. . . . Lamon used and backed up her work computer with Zip disks while employed with [RTI].

210. . . . Lamon admitted looking at her computer after her deposition on May 24, 2005 and that she attempted to remove or modify material in her personal computer relating to [RTI].

. . . .

222. . . . Lamon's responses to discovery, deposition testimony and trial testimony are inconsistent and not credible.

. . . .

228. . . . Lamon has destroyed or altered evidence in the matter before the Court.

. . . .

231. Exhibit # 101 can not be used to calculate . . . Lamon's commission and . . . Lamon continued to take the information despite the fact that it couldn't be used for that purpose.

232. . . . Lamon took information from [RTI] beginning in 2002 with the intention of competing with [RTI].

[Conclusions of Law]

18. Lamon breached her duty of loyalty and confidentiality to [RTI] by improperly taking proprietary and confidential information, even if not a trade secret, during her term of employment since she planned to use this proprietary and confidential information to compete with [RTI].

. . . .

42. [RTI] is entitled to compensatory damages as a result of . . . Lamon['s] and [SysProg's] wrongful interference with its prospective contractual relations.

43. Lamon's actions in misappropriating [RTI's] confidential information were willful, wanton, malicious and in reckless disregard of [RTI's] legitimate interests.

44. [RTI] is entitled to punitive damages as result of . . . Lamon's willful and malicious misappropriation of its confidential information, and due to the willful acts of unfair competition on her part.

45. [RTI] is entitled to attorney's fees pursuant to . . . [Section] 57–3A–5 and Paragraph 13 of the employment agreement between . . . Lamon and [RTI].

46. [RTI] owns trade secrets, as that term is used in the New Mexico Uniform Trade Secrets Act[.]

47. [RTI] has used reasonable efforts to maintain [the] secrecy [of] its proprietary methods of doing business and its confidential information regarding medical professionals and medical facilities.

48. ... Lamon and [SysProg] have misappropriated, as that term is used in ... [Section] 57–3A–2, the trade secrets of [RTI] by using and disclosing those trade secrets obtained from [RTI] by improper means[.]

    ....

50. [RTI] is entitled to damages against ... Lamon and SysProg for the lost profit from the sales by ... Lamon to UHS Radiation Oncology in the amount of $14,217.58, and the sales by ... Lamon to Ireland Cancer Center in the amount of $3,919.50, pursuant to ... [Section] 57–3A–2.

51. The misappropriation of ... Lamon was willful and malicious and the Court awards twice the amount of the actual damages, $18,137.08, pursuant to ... [Section] 57–3A–2.