This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

**IN THE SUPREME COURT OF TH E STATE OF NEW MEXICO**

**JOHNNY A. HERRERA**,

Worker-Petitioner,

**v.**                                                            **NO. 31,995**

**EBERLINE SERVICES and COMMERCE**
**& INDUSTRY INSURANCE COMPANY**,

Employer-Insurer-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Helen L. Sterling, Workers Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Petitioner

Hoffman Kelley, L.L.P.
Michelle D. Lopez
McKinney, TX

for Respondents

**DECISION**

**BOSSON, Justice.**

Worker Johnny Herrera appeals from a compensation order of the Workers' Compensation Administration finding that he suffered some impairment from a work-related injury, but leaving unresolved the amount of the impairment because of a lack of "credible admissible evidence." The order, issued nearly seven months after the close of evidence, mandated that the parties either accept an impairment rating that was assigned by an unauthorized physician, or agree to submit Worker's records to an authorized physician who would assign a valid rating. Worker appealed, and the Court of Appeals dismissed, holding that the compensation order was not a final, appealable order. We granted certiorari and reverse, holding that the order was final and appealable and resulted in a finding of 0% impairment. We therefore remand Worker's appeal so that it may proceed on the merits.

**BACKGROUND**

Worker was employed as a waste management coordinator by Employer Eberline Services when he suffered an accidental exposure to chlorine while on the job. Shortly after the incident, Worker sought emergency medical attention and was admitted to the Los Alamos Medical Center after being diagnosed with chemical pneumonitis and bacterial pneumonia. During the course of his two-

week hospitalization, Worker came under the care of Dr. James Ziomek who assessed and treated his pulmonary conditions.

Employer selected Dr. Ziomek as Worker's treating physician after he was released from the hospital. Dr. Ziomek is board-certified in internal medicine, and prior to medical school, worked as a respiratory therapy technician for five years. However, Dr. Ziomek is not a specialist in lung-related injuries, and he testified in his deposition that he had treated approximately six cases of chemical pneumonitis in his eleven years of practice. Dr. Ziomek also admitted that he had no experience providing impairment ratings and that he had never been trained to do so.

After treating Worker for a few weeks, Dr. Ziomek grew concerned that the fluid in his lungs was not being absorbed as rapidly as expected. Dr. Ziomek referred Worker to Dr. Charles Riley, a board-certified pulmonologist with significant experience treating lung injuries. However, Dr. Riley also lacks experience in providing impairment ratings. Drs. Ziomek and Riley treated Worker throughout the next year until Dr. Riley placed Worker at "maximum medical improvement" approximately one year later.

During that same year, Employer's nurse case manager attempted to

3

transfer Worker to Dr. Theresa Genovese-Elliott. However, the WCJ later determined that the transfer "was not legally done," and that as a result Dr. Elliott was not authorized to treat Worker or to assess his impairment. Dr. Elliott is board-certified in physical medicine and rehabilitation, as well as in spine, sports, and occupational medicine, but she has no professional experience treating lung injuries. Dr. Elliott testified at her deposition that she had never provided an impairment rating related to the respiratory system.

The crux of this appeal involves two conflicting impairment ratings that were presented to the WCJ through the deposition testimony of Drs. Ziomek and Elliott. Dr. Riley did not provide an impairment rating. In Dr. Ziomek's deposition, with help from Worker's attorney, he assigned Worker a Class III impairment rating with a 43% whole body impairment. Prior to her deposition, Dr. Elliott independently reviewed Worker's medical records, and she testified that she assigned him a Class II impairment with a 17% whole body impairment. At Dr. Riley's deposition, although Worker's attorney attempted to assist him in assessing Worker's impairment level, he refused to provide a rating, stating that he would defer to Dr. Elliott.

The deposition testimony of all three physicians was presented to the WCJ

4

at a one-day trial, along with other evidence relating to Worker's claim. Several days after the close of evidence, the WCJ issued an evidentiary order ruling inadmissible Dr. Elliott's deposition testimony and impairment assessment because she had not received a referral from an authorized health care provider. This ruling left the WCJ with Dr. Ziomek's Class III, 43% impairment rating as the only admissible rating of Worker's impairment.

On April 25, 2008, some seven months after the trial, the WCJ issued her Compensation Order, which contained Findings of Fact and Conclusions of Law. In her order, the WCJ rejected Dr. Ziomek's assessment because she did not find him to be credible, largely owing to his inexperience in providing impairment ratings and because of the manner in which he allowed Worker's attorney to "walk[] him through" the assessment process. This left the WCJ without admissible, credible evidence on the question of the degree of Worker's impairment. The WCJ therefore found that Worker successfully had proven that he had reached his maximum medical improvement and that he had suffered "an impairment"; but he "failed to provide acceptable evidence by a specialist of the *amount* of the impairment." (Emphasis added.)

Consequently, relying on *Yeager v. St. Vincent Hospital*, 1999-NMCA-020,

¶ 17, 126 N.M. 598, 603, 973 P.2d 850, 855 (filed 1998) (holding that a WCJ may independently assign an impairment rating except in cases that "require some medical judgment in order to determine the degree of impairment"), the WCJ refused to assign an impairment rating to Worker "without the aid of an impairment rating offered by a pulmonary specialist." The WCJ explained that she was "unable and unwilling to assign an impairment rating accurately to Worker" because of the complexity of his medical records and the need to correct certain tests results to take into account the altitude at which the tests were administered.

Rather than dismissing Worker's case or finding a 0% impairment rating, the WCJ gave the parties a choice: "The parties will either accept the seventeen percent impairment rating given by Dr. Elliott, a doctor whose opinions are currently not authorized, or request a hearing where the Administration can, with the assistance of the parties, appoint a specialist who will have all of Worker's medical records, examine Worker, and offer an impairment rating."

Worker appealed the order, and the Court of Appeals initially assigned the appeal to the general calendar. However, after full briefing by the parties, the Court removed the appeal from the general calendar and dismissed—seven

months after the appeal was filed—ruling that the compensation order was not a final, appealable order.

**DISCUSSION**

Worker asserts that the compensation order was a final, appealable order, and asks this Court to reverse the Court of Appeals and remand so that his appeal can be decided on the merits. Employer–Insurer argues that the Court of Appeals correctly concluded that the compensation order was not a final, appealable order.

The parties both invoke *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 238, 824 P.2d 1033, 1040 (1992), in support of their respective positions regarding whether the compensation order was a final, appealable order. We find *Kelly Inn* to be inapposite to this case. In *Kelly Inn*, we were asked to determine whether a district court ruling was a final, appealable order when it had resolved all issues of liability and damages in a lease dispute, but had deferred the award of attorney fees to a subsequent proceeding. *Id.* at 233, 824 P.2d at 1035. Prior to the resolution of the fees, the losing party appealed the district court's ruling that he had breached the terms of the lease. *Id.* The appellees argued that this Court lacked jurisdiction because "all issues of law and fact have [not] been determined and the case [was not] disposed of by the trial court to the fullest extent possible."

7

*Id.* at 236, 824 P.2d at 1038. We rejected such a rigid formulation of a final judgment rule in favor of a more flexible set of guidelines. *Id.* at 238, 824 P.2d at 1040. We then determined that the district court's ruling on liability and damages was a final judgment for purposes of appeal. *Id.* at 240, 824 P.2d at 1042.

Unlike *Kelly Inn*, this case does not present a question of whether the compensation order was a final judgment. Instead, we are faced here with how to interpret an order that fails to comport with statutory requirements imposed on the WCJ. According to the Workers' Compensation Act, "Following the presentation of the evidence, the workers' compensation judge shall determine the questions at issue and file the decision with the director within thirty days . . . ." NMSA 1978, § 52-5-7(B) (1993).

The parties and the WCJ agree that "the questions at issue" in determining whether Worker was entitled to benefits were whether he proved (1) that he had reached maximum medical improvement, (2) that he had suffered permanent impairment "by reason of injury arising out of and in the course of employment," and (3) the degree of that impairment. NMSA 1978, § 52-1-26(B) (1990). The WCJ expressly concluded that Worker had met his burden with respect to the first two elements, but that "[t]he amount of the impairment rating cannot be assessed

on this record given the lack of credible admissible evidence on this point by a pulmonologist." However, rather than dismissing Worker's claim or assessing his impairment at 0%, the WCJ presented the parties with the aforementioned choice, leaving the question of Worker's impairment rating undetermined, in contravention of Section 52-5-7(B). *See id.* ("[T]he workers' compensation judge *shall* determine the questions at issue." (Emphasis added.)).

The WCJ's decision to present the parties with the choice of accepting a 17% impairment rating or agreeing to a new assessment by a credible pulmonologist might have been authorized had she informed the parties of her decision sooner. A WCJ is permitted "to direct or allow supplementation of evidence." 11.4.4.12(N)(5) NMAC (6/13/03). However, a WCJ may only do so "[u]nder exceptional circumstances and in the interest of justice, *within ten (10) days of the close of the adjudication hearing . . . ." Id.* (emphasis added).

Here, the WCJ did not make a finding of "exceptional circumstances" or present the parties with the option to supplement the record by obtaining another impairment rating within 10 days of the adjudication hearing. Nor did she do so within 30 days of the hearing, at the time when she was required by statute to file her decision with the director. Not until the WCJ issued the compensation

9

order—six months after the statutory deadline for filing the decision and nearly 200 days beyond the permissible date for supplementing the record—did the WCJ alert the parties to their option to supplement the record because of the lack of credible, admissible evidence relating to Worker's impairment.

Worker rightly points out that a primary goal of the Workers' Compensation Administration is to provide a "quick and efficient" system for the resolution of workers' claims. *See* NMSA 1978, § 52-5-1 (1990). The time limits imposed by the Workers' Compensation Act and its corresponding regulations are a critical means of meeting that goal. Indeed, as the Court of Appeals once noted, the entire process can be completed "in a little more than six months." *Sanchez v. Bradbury & Stamm Constr.*, 109 N.M. 47, 49, 781 P.2d 319, 321 (Ct. App. 1989). Achieving the aim of an expedited process is undoubtedly the reason why a WCJ's authority to supplement the record dissipates so quickly after a trial. Where, as here, a WCJ's order is already six months late, an order to supplement the record contravenes this central directive of the Workers' Compensation System.

Employer argues that the choice presented by the WCJ had the effect of unfairly giving Worker "a second bite at the apple by being able to obtain an

impairment from a pulmonologist rather than receiving no disability." We agree. A straightforward application of the time limits required by statute and regulation leads us to conclude that the WCJ no longer had the authority to leave unresolved the critical question of Worker's impairment rating. At such an advanced stage in the proceedings, the WCJ's authority was limited to "determin[ing] the questions at issue," as required by statute. Section 52-5-7(B).

While the order gave the parties only two options, we note that a third option was necessarily implicit—reject the order altogether, effectively triggering a finding of 0% impairment, and appeal. At oral arguments, Worker explained that he found the choice presented by the WCJ to be wholly unsatisfactory and that he was seeking a whole record review of the trial proceedings. Upon further questioning by this Court, he took the position that he had rejected the WCJ's entire decision. Worker therefore asked this Court to remand this case to the Court of Appeals so that it could determine, based on a whole record review, whether he had met his burden of persuasion in demonstrating his impairment and at what rating. In other words, Worker views this as an appeal from an order concluding that he did *not* meet his burden that he was entitled to worker's compensation benefits. Worker contends that such a whole record review will

prove impairment at the 43% level.

We agree with Worker's interpretation of the order. The WCJ concluded that Worker did not meet his burden of persuasion regarding his degree of impairment because (1) Dr. Ziomek's impairment rating of 43% was not credible, and (2) Dr. Elliott's rating of 17% was inadmissible. Accordingly, we will imply a finding of 0% impairment—the only logical and permissible finding the WCJ could make based on her view of the evidence and on the untimeliness of the order. That finding is subject to a whole record review along with the rest of the WCJ's findings and conclusions.[1]

We observe the inconsistency between a finding of impairment—which heretofore has not been disputed—and a 0% rating, but this appeal is not before us on its merits. The parties must be afforded an opportunity to brief and argue a 0% impairment rating, and the Court of Appeals an opportunity to address that decision prior to any discretionary review by this Court. We leave it to the parties and the Court of Appeals to address the issues raised on appeal, including whether a whole record review supports the WCJ's finding of impairment, and if so, what

[1]We pass no judgment on the validity of the WCJ's determinations related to the admissibility or credibility of the physicians' impairment ratings.

the rating should be based on the admissible evidence in the record.

**CONCLUSION**

We reverse the Court of Appeals and remand for proceedings consistent with this Opinion and in accordance with NMSA 1978, Section 52-5-8(B) (1989) (providing that an appeal from a decision of a WCJ "shall be advanced on the calendar and disposed of as promptly as possible").

13

**IT IS SO ORDERED.**

_____
RICHARD C. BOSSON, Justice

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

14